## THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| DELILAH MORRISON and SHERRI ARGUELLO, On Behalf of Themselves And All Others Similarly Situated, | **Civil Action: 08-cv-01121-PJS-JJG** |
| Plaintiffs, | |
| vs. | |
| MONEYGRAM INTERNATIONAL, INC., PHILIP W. MILNE, JESS T. HAY, LINDA JOHNSON RICE, ALBERT M. TEPLIN, TIMOTHY R. WALLACE, MONTE E. FORD, JUDITH K. HOFER, ROBERT C. KRUEGER, DONALD E. KIERNAN, DOUGLAS L. ROCK, OTHÓN RUIZ MONTEMAYOR, DAVID J. PARRIN, ANTHONY P. RYAN, THE MONEYGRAM INTERNATIONAL, INC. PENSION AND 401(k) COMMITTEE, and JOHN DOES 1-20, | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT AND FOR RELATED RELIEF

## TABLE OF CONTENTS

I.    BACKGROUND ................................................................................................. 1

      A.    Summary Of The Litigation ........................................................................ 1

      B.    Settlement Negotiations and Result .......................................................... 6

      C.    Extensive Discovery Had Been Completed
            When The Settlement Was Reached ........................................................ 6

II.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL ............................ 7

      A.    Judicial Policy Favors Settlement Of Class Action Litigation .................... 7

      B.    The Standards For Preliminary
            Approval Of A Settlement Under Rule 23(c) ............................................. 8

      C.    The Settlement Merits Preliminary Approval .............................................. 10

            1.    The Settlement is the Result of a
                  Thorough, Rigorous and Adversarial Process ...................................... 10

                  (a)    Class Members should be Given Notice and
                         Opportunity to be Heard Concerning the
                         Proposed Settlement ................................................... 11

            2.    The Settlement is in the Public Interest ................................................ 14

III.  THE PROPOSED SETTLEMENT NOTICE SATISFIES
      RULES 23(d) AND (e) AND DUE PROCESS REQUIREMENTS .................. 15

IV.   THE SETTLEMENT CLASS SHOULD BE
      PRELIMINARILY CERTIFIED ......................................................................... 17

V.    CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Amchem Prods, Inc. v. Windsor,*
  521 U.S. 591 (1997) ...................................................................... 20

*Bittinger v. Tecumseh Prods. Co.,*
  123 F.3d 877 (6th Cir. 1997) ....................................................... 17

*Bowling v. Pfizer, Inc.,*
  143 F.R.D. 141 (S.D. Ohio 1992) .......................................... 10, 14

*Bunnion v. Consolidated Rail Corp.,*
  No. Civ.A. 97-4877, 1998 WL 372644 (E.D. Pa. May 14, 1998).................................. 22

*Byrd v. Chadwick,*
  956 S.W.2d 369 (Mo. Ct. App. 1997) .......................................... 9

*Cohn v. Nelson,*
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ........................................ 13

*DeBoer v. Mellon Mortg. Co.,*
  64 F.3d 1171 (8th Cir. 1995) ..................................................... 17

*Holden v. Burlington,*
  665 F. Supp. 1398 (D. Minn. 1987) ......................................... 7, 8

*In re Broadwing, Inc. ERISA Litig.,*
  No. 1:02-cv-00857, 2006 WL 3831382 (S.D. Ohio Oct. 5, 2006).................................. 14

*In re Corrugated Container Antitrust Litig.,*
  659 F.2d 1322 (5th Cir. 1981) ..................................................... 7

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.,*
  248 F.R.D. 483 (E.D. Mich. 2008) ........................................... 23

*In re Employee  Ben. Plans Sec. Litig.,*
  Civ. No. 3-92-708 1993 U.S. Dist. LEXIS 21226 (D. Minn. June 2, 1993) ............. 10, 14

*In re Flight Transportation Corp Sec. Litig.,*
  730 F.2d 1128 (8th Cir. 1984) ................................................ 8, 10

*In re Ikon ERISA Litig.*,
    191 F.R.D. 457 (E.D. Pa. 2000) ........................................................... 17, 18, 19

*In Re Merck & Co., Inc. Securities, Derivative & "Erisa" Litig.*,
    Civil Action Nos. 05-1151 (SRC), 05-2369(SRC),
    2009 WL 331426 (D.N.J. Feb. 10, 2009) ..................................................... 23

*In re Rio Hair Naturalizer Products Liability Litig.*,
    No. MDL 1055, 1996 U.S. Dist. LEXIS 20440 (E.D. Mich. Dec. 20, 1996) .................. 8

*In re Southern Ohio Correctional Facility*,
    173 F.R.D. 205 (S.D. Ohio 1997)............................................................. 8

*In re Telectronics Pacing Systems, Inc., Accufix Atrial "J" Leads Prod. Liab. Litig.*,
    186 F. Supp. 2d 459 (S.D. Ohio 1999) ...................................................... 7

*In re Traffic Executive Association-Eastern Railroads*,
    627 F.2d 631 (2d Cir. 1980) ................................................................. 9

*In re Universal Service Fund Telephone Billing Practices Litig.*,
    219 F.R.D. 661 (D. Kan. 2004) ............................................................. 22

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
    No. MDL 1559 4:03-MD-015,
    2004 U.S. Dist. LEXIS 23342 (W.D. Mo. April 20, 2004)................................. 13, 15

*James v. City of Dallas*,
    254 F.3d 551 (5th Cir. 2001) ............................................................... 21

*Johnson v. City of Tulsa*,
    No. 94-CV-39-H(M), 2003 WL 24015151 (N.D. Okla. May 12, 2003)...................... 9, 14

*Kogan v. AIMCO Fox Chase, L.P.*,
    193 F.R.D. 496 (E.D. Mich. 2000) ......................................................... 9, 14

*LaFlamme v. Carpenters Local No. 370 Pension Plan*,
    212 F.R.D. 448 (N.D.N.Y. 2003) ........................................................... 22

*Little Caesar Enter., Inc. v. Smith*,
    72 F.R.D. 236 (E.D. Mich. 1997) ........................................................... 18

*Little Rock School District v. Pulaski County*,
    921 F.2d 1371 (8th Cir. 1991) .............................................................. 7

iii

*Marshall v. Holiday Magic, Inc.*,
  550 F.2d 1173 (9th Cir. 1977) ........................................................................ 16

*Mass. Mut. Life Ins. Co. v. Russell*,
  473 U.S. 134 (1985) ...................................................................................... 23

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306, 70 S. Ct. 652 (1950) .............................................................. 15

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ...................................................................................... 20

*Rankin v. Rots*,
  220 F.R.D. 511 (E.D. Mich. 2004) .......................................................... 17, 18

*Reed v. Rhodes*,
  869 F. Supp. 1274 (N.D. Ohio 1994) ............................................................ 10

*Robinson v. Ford Motor Co.*,
  No. 1:04 CV 00844, 1:04 CV 00845,
  2005 WL 5253339 (S.D. Ohio June 15, 2005)............................................. 10

*Thomas v. SmithKline*,
  201 F.R.D. 386 (E.D. Pa. 2001) ............................................................. 18, 21

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988) ..................................................................... 9, 10

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ..................................................................... 15, 17

## Other Material

Moore's Federal Practice, Manual for Complex Litigation
  (Third), § 30.42 (1995) .................................................................................. 8

Plaintiffs Delilah Morrison and Sherri Arguello ("Plaintiffs") have moved for an order granting preliminary approval of a proposed class action settlement (the "Settlement") of this Employee Retirement Income Security Act ("ERISA") case for $4,500,000 on the terms set forth in the Class Action Settlement Agreement, dated October 7, 2010 and attached to the accompanying Declaration of Thomas J. McKenna at Exhibit 1. Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement; (2) preliminarily certify a settlement class ("Settlement Class"); (3) direct the dissemination of notice to the members of the Settlement Class; and (4) schedule a hearing to consider whether to grant final judicial approval to the Settlement.

## I.    BACKGROUND

### A.    <u>Summary Of The Litigation</u>

On April 22, 2008, Plaintiff Morrison filed her class action complaint against MoneyGram International, Inc. ("MoneyGram" or the "Company") and certain MoneyGram directors, officers and employees alleging various claims under ERISA relating to the MoneyGram International, Inc. 401(k) Plan's (the "Plan") investment in MoneyGram stock ("MoneyGram Stock"). *See* Docket No. 1 ("First Complaint").

On May 19, 2008, Defendants filed a motion to dismiss the First Complaint for lack of jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). *See* Docket No. 5. On July 14, 2008, Defendants filed their memorandum of law (with declarations) in support of their motion. *See* Docket Nos. 8, 9, 10.

In response to the motion to dismiss, on August 7, 2008, Plaintiffs Morrison and Arguello filed their Amended Class Action Complaint ("Amended Complaint"). *See*

Docket No. 11.   The Amended Complaint alleges that MoneyGram Stock, and in consequence, the MoneyGram Stock Fund, were imprudent investments for several reasons, including the allegation that the market for MoneyGram Stock was artificially inflated as a result of inaccurate information disseminated to the market concerning MoneyGram's improper business practices which caused the Company's financial statements to be misleading during the class period from July 1, 2004 to October 7, 2010, inclusive (the "Settlement Class Period" or "Class Period").

Plaintiffs also alleged that Defendants should have made proper disclosures to them and other Plan participants about the true risks involved in investing for retirement in MoneyGram Stock and should have corrected inaccurate disclosures that were previously made to them.  Plaintiffs further alleged that certain Defendants had conflicts of interest that affected their performance as fiduciaries and that some fiduciaries failed to properly monitor other fiduciaries and that these conflicts and failures also harmed the Plan and the Plan participants.

Plaintiffs further alleged that Defendant fiduciaries of the Plan were purchasing MoneyGram Stock for Plan participants at inflated prices and, at the same time, failed to apprise Plan participants of the true nature of the Company's high risk Investment Portfolio, which was laden with mortgage-backed securities, or that the Company would incur a loss of over $1.6 billion dollars as a result of these high risk investments.  ¶¶ 90, 116.[1]   Plaintiffs argued that by not later than mid-October 2007, Defendant fiduciaries knew or should have known that the Company's huge investment of sub-prime mortgage-

---

[1]        All references to "¶ ____" are to the Amended Complaint.

backed securities and CDOs inside its Investment Portfolio would be subject to enormous risk, thus rendering MoneyGram Stock an imprudent investment for the Plan during the Class Period.   ¶¶ 81, 82.   Plaintiffs also alleged that Defendants' accounting treatment and valuation of the assets in the Investment Portfolio violated General Accepted Accounting Principles ("GAAP"). ¶¶ 73-78.   Plaintiffs further alleged that Defendants' knowledge of the increasing risks of huge losses in its Investment Portfolio continued to accumulate during the Class Period.

In short, in an allegedly reckless and undisclosed effort to reap higher returns, Plaintiffs allege that the Company invested hundreds of millions of dollars of short term customer deposits in long term bonds or similar securities backed by high-risk mortgages. ¶ 65.   The Company Stock was therefore alleged to be an imprudent investment for the Plan during the Class Period because of the Company's alleged serious mismanagement, the precipitous decline in the price of its Stock and the hidden dangers of its high risk Investment Portfolio.

On September 5, 2008, Defendants filed another motion to dismiss.   *See* Docket Nos. 18, 19, 20, 21.   On October 2, 2008, Plaintiffs filed their opposition to Defendants' motion to dismiss.   *See* Docket Nos. 22, 23, 24.   And, on October 10, 2008, Defendants filed their reply.   *See* Docket No. 25.

On October 22, 2008, the parties appeared before this Court for oral argument on Defendants' motion to dismiss the Amended Complaint.   At the conclusion of the hearing, this Court took the motion to dismiss under advisement.

On March 25, 2009, the Court issued an Order granting and denying Defendants'
motion to dismiss. *See* Docket No. 37.   The opinion was published at *Morrison v.
MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1045 (D. Minn. 2009).   In the opinion, this
Court held the following: (1) Plaintiffs had a colorable claim for vested benefits and
therefore were 'participants' in the Plan with the right to bring suit against MoneyGram
under § 1132(a)(2) and (3)"; (2) ". . . the Plan did not clearly require MoneyGram to
invest all employer contributions in the Employer Stock Fund" (*id.*, at 1049); (3)
Plaintiffs allegations "taken as a whole, sufficiently allege that at some point
'[MoneyGram] stock [became] so risky that no prudent fiduciary, reasonably aware of
the needs and risk tolerance of the plan's beneficiaries, would [have] invest[ed] *any* plan
assets in it, regardless of what other stocks were also in th[e] portfolio'" (*id.* at 1053-54);
(4) Plaintiffs had sufficiently alleged a breach-of-loyalty claim – that Defendants
incorporated SEC filings into the SPD and into the Plan prospectuses making them
fiduciary communications (*id.* at 1055); (5) "Rule 9(b) does not apply to negligence
claims [here]" (*id.* at 1055); (6) Defendants' argument regarding reliance and causation
were premature (*id.* at 1056); (7) Plaintiffs had sufficiently alleged misleading
misrepresentations (*id.* at 1057); (8) "[P]aintiffs have pleaded viable claims for breach of
fiduciary duty against the appointed fiduciaries, and thus the Court cannot dismiss the
monitoring claim . . ."; but (9) Plaintiffs' claim regarding MoneyGram's breach of the
duty of loyalty because it failed to engage independent fiduciaries was dismissed (*id.* at
1058).   Further, the Court held that because Plaintiffs had pleaded viable claims for

breach of fiduciary duty, "they have pleaded viable claims for co-fiduciary duty." *See id.* at 1059.

On April 22, 2009, Defendants filed their Answer with sixteen enumerated defenses. *See* Docket No. 45. Thereafter, the parties engaged in discovery, including the production by Defendants of voluminous documents concerning the operations of the Plan and the underlying Investment Portfolio. On April 26, 2010, Plaintiffs conducted the deposition of Robin Swanson, an employee of Defendant MoneyGram and a representative of the committee charged with the fiduciary duties of properly operating the Plan.

On April 30, 2010, Plaintiffs filed their motion for class certification. *See* Docket Nos. 63, 64, 65, 66, 67, 68. Thereafter, Plaintiffs Arguello and Morrison produced documents and traveled to Minnesota and were deposed by Defendants' counsel on May 6 and May 7, 2010, respectively.

On May 28, 2010, Defendants filed their opposition to Plaintiffs' motion for class certification. *See* Docket Nos. 72-79. On June 8, 2010, Defendants also filed a motion for Partial Summary Judgment seeking to obtain the dismissal of a number of named Defendants and to dismiss all claims by Plaintiffs that Defendants had breached their disclosure duties. *See* Docket Nos. 80-88.

On June 15, 2010, the Court entered an Order extending various litigation deadlines while the parties engaged in mediation. *See* Docket No. 92.

### B.    Settlement Negotiations And Result

Accompanying this filing is the Declaration of Thomas J. McKenna in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and for Related Relief ("McKenna Decl."), Lead Counsel for Plaintiffs, which avers that the proposed Settlement is the result of arms'-length negotiations between adverse represented parties and is not the result of collusion or complicity of any kind.

The record demonstrates that this was a hard fought and strongly disputed action. There were also substantial risks and uncertainties surrounding this litigation, yet despite these risks Plaintiffs were able to obtain a Settlement of $4,500,000 in cash to be paid into an interest-bearing escrow account for the benefit of the Settlement Class.

### C.    Extensive Discovery Had Been Completed When The Settlement Was Reached

Before engaging in settlement discussions, Plaintiffs' counsel conducted extensive discovery, including the review of hundreds of thousands of pages of documents which have been produced by MoneyGram to Plaintiffs' counsel and loaded into a special computer program allowing for the electronic organization and coding of the documents. In addition to reviewing these documents provided by MoneyGram, Plaintiffs' counsel, as mentioned above, also deposed Ms. Robin Swanson, Director of Benefits for MoneyGram, under Rule 30(b)(6) on matters relating to the Plan, the MoneyGram Company Stock Fund and actions and inactions of the MoneyGram International, Inc. 401(k) Committee (the "Committee") charged with protecting the Plan participants. *See* McKenna Decl. at ¶ 22.  In addition, Plaintiffs served Notice of Depositions as to thirteen

of the named Defendants, together with four Notices of Depositions on employees or former employees of Defendant MoneyGram who were involved with the Investment Portfolio.  In addition, Plaintiffs served subpoenas and subpoenas *Duces Tecum* on five non-parties, including Euronet, Fiduciary Counselors, Thomas H. Lee Partners, T. Rowe Price Inc. and Goldman Sachs.  Document productions were made by Euronet and Fiduciary Counselors to Plaintiffs' counsel and these documents were also reviewed by Plaintiffs' counsel in advance of the mediation.

At this point, further discovery and the associated time and expense were temporarily suspended as the parties explored whether the case could be settled at mediation.

## II.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    <u>Judicial Policy Favors Settlement Of Class Action Litigation</u>

"The law strongly favors settlements."  *Little Rock School District v. Pulaski County*, 921 F.2d 1371, 1383 (8th Cir. 1991).  *See also Holden v. Burlington*, 665 F. Supp. 1398, 1405 (D. Minn. 1987).  Settlements of complex cases such as this one greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice, for a "just result is often no more than an arbitrary point between competing notions of reasonableness."  *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981).  Because settlement is a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement.  *In re Telectronics Pacing Systems, Inc., Accufix Atrial "J" Leads Prod. Liab. Litig.*, 186 F. Supp. 2d 459, 476 (S.D. Ohio 1999); *In re Southern Ohio Correctional Facility*, 173

F.R.D. 205, 211 (S.D. Ohio 1997*); In re Rio Hair Naturalizer Products Liability Litig.*, No. MDL 1055, 1996 U.S. Dist. LEXIS 20440, at *36 (E.D. Mich. Dec. 20, 1996); *Moore's Federal Practice, Manual for Complex Litigation (Third)*, § 30.42 (1995).

**B.    The Standards For Preliminary Approval Of A Settlement Under Rule 23(c)**

In *In re Flight Transportation Corp Sec. Litig.*, 730 F.2d 1128 (8th Cir. 1984), the Court explained that proposed class action settlements are "committed to the sound discretion of the trial judge," with the trial judge to consider the following factors (among other factors, in the trial judge's discretion) bearing on the fairness of the settlement. The relevant factors include:

(a)    The probability of success in the litigation;

(b)    The difficulties, if any, to be encountered in the matter of collection;

(c)    The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

(d)    The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1135.

This case is currently at the first step of the Settlement approval process, where the issue now before the Court is not whether the Settlement merits final approval, but rather whether the Settlement is within the range of possible approval and whether the Court should direct notification to the class members of the proposed Settlement to solicit their views and eventually proceed with a fairness hearing. *See Holden*, 665 F. Supp. at 1402;

*see also Byrd v. Chadwick*, 956 S.W.2d 369 (Mo. Ct. App. 1997).  The *Byrd* court, citing

federal precedent, characterized this stage as determining whether the settlement could be

"tentatively certified," and "it is at most a determination that there is what might be

termed 'probable cause' to submit the proposal to class members and hold a full-scale

hearing as to its fairness."  *Id.* (quoting *In re Traffic Executive Association-Eastern

Railroads*, 627 F.2d 631, 634 (2d Cir. 1980)).  According to *Byrd*, the trial court should

review whether "it appeared that the named plaintiffs were adequate representatives of

the class, that there is no apparent conflict of interest between the representatives and the

class or among the class, that the settlement on its face appears to be fair and to have

been the result of arms length negotiations."  *Id.*

　　　To the extent that the Court should examine, at this stage in the proceedings,

factors which determine whether final approval is likely to be granted, the scope of that

consideration is limited.  At this stage, the Court cannot undertake a full and complete

fairness review, especially when the class members have not yet been notified and given

the opportunity to be heard. *Id.*   Rather, the Court's duty is to conduct a threshold

examination of the overall fairness and adequacy of the Settlement in light of the likely

outcome and the cost of continued litigation.  *Van Horn v. Trickey*, 840 F.2d 604, 607

(8th Cir. 1988).  Moreover, in making this threshold examination of the fairness of the

Settlement, the Court is entitled to rely upon the judgment of experienced counsel,

especially where, as here, substantial discovery and motion practice has been conducted.

*Johnson v. City of Tulsa*, No. 94-CV-39-H(M), 2003 WL 24015151, at *11 (N.D. Okla.

May 12, 2003); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501 (E.D. Mich.

2000); *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 151 n.7 (S.D. Ohio 1992).  In making its determination of whether to grant preliminary approval, the Court is also entitled to rely upon "its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *Robinson v. Ford Motor Co.*, No. 1:04 CV 00844, 1:04 CV 00845, 2005 WL 5253339, at *3 (S.D. Ohio June 15, 2005); *Reed v. Rhodes*, 869 F. Supp. 1274, 1278 (N.D. Ohio 1994).

## C.    **The Settlement Merits Preliminary Approval**

Applying the standards set forth above, the Settlement merits preliminary approval.

### 1.    **The Settlement is the Result of a Thorough, Rigorous and Adversarial Process**

A primary focus, in determining whether to grant preliminary approval, is to determine whether the Settlement is "the product of fraud or collusion." *In re Employee Ben. Plans Sec. Litig.*, Civ. No. 3-92-708 1993 U.S. Dist. LEXIS 21226, at *13 (D. Minn. June 2, 1993) (citing *Van Horn*, 840 F.2d at 606); *In re Flight Transp.*, 730 F.2d at 1135, *cert. denied*, 469 U.S. 1207 (1985).

This Court is familiar with the procedural history of this case – a history which clearly demonstrates a proper adversarial relationship between the parties.  The suit was filed two and one half years ago.  Plaintiffs successfully defended the vast majority of their claims against a comprehensive motion to dismiss, engaged in extensive merits discovery, engaged in Class discovery, made a motion for class certification, engaged a forensic account as an expert, and engaged another expert on damages and obtained a

preliminary damages report, before even engaging in any settlement discussions.  *See generally* McKenna Decl.  The proposed Settlement is the result of work by experienced counsel who attest to the fact that there has been no collusion of any kind (McKenna Decl. at ¶ 4).  These facts support the conclusion that the proposed Settlement is at the very least in the range of possible Settlement approval and worthy of class notice and a public hearing on the merits of the Settlement.

**(a)      Class Members should be Given Notice and Opportunity
to be Heard Concerning the Proposed Settlement**

The Settlement, which obligates Defendants to pay $4,500,000, clearly merits – at the very least – consideration by all of the members of the Class.  It is difficult to compare the Settlement to the amount that the Class might have obtained if it had been completely successful in establishing liability at trial, because, assuming liability was established, the parties hotly debated the proper methodologies for computing damages.

If the fact finder found that a fiduciary should have acted to suspend further investment in the MoneyGram Stock Fund and/or sell the existing position by no later than mid-October 2007, Defendants argued that the maximum amount of damages from that time until February 1, 2008 when an independent fiduciary was appointed to manage the MoneyGram Stock Fund was $7 million dollars.  Defendants argued, however, that such a calculation was improper because had the Committee attempted to sell the Stock, it would have driven the price down, thereby causing some or all of the harm that the hypothetical sale was designed to avoid.  Defendants main defense on damages was that only Plan participants who made new purchases of the MoneyGram Stock Fund after

mid-October of 2007 were harmed by the alleged fiduciary failure to act and that given the small amount of Stock that was purchased from that date until the appointment of the independent fiduciary, the damages were only at best a few hundred thousand dollars.

Plaintiffs' expert, on the other hand, calculated that if the money which had been invested in MoneyGram Stock Fund as of mid-October 2007 had instead been invested in an average weighted basket of alternative prudent investments offered by the Plan, then the damages from mid-October 2007 to the appointment of the independent fiduciary would have been approximately $12 million dollars.  This $12 million dollar number includes both "holders" as of mid-October and "purchasers" who invested new money thereafter.  In the alternative, Plaintiffs' expert assumed if it could be proven that the MoneyGram Stock was not a prudent investment as of June 1, 2006, then the damages using the average weighted basket of alternative prudent investments were approximately $23 million.  Defendants argued, however, that there was no evidence that the Investment Portfolio was impaired or that Defendants/fiduciaries should have taken any action as early as June 2006.

Therefore, the Settlement offered for preliminary approval is for approximately one-third of Plaintiffs' most likely provable damages calculation and many multiples greater than Defendants' view that only purchasers should recover.  Of course, the proposed Settlement amount is also superior to a zero damages result which would be the outcome if liability for breach of fiduciary duty was not proven.

The fairness and adequacy of the Settlement is further underscored by taking into account the obstacles the Class faced in ultimately succeeding on the merits, as well as

the expense and likely duration of the litigation.  *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 U.S. Dist. LEXIS 23342, at *39-40 (W.D. Mo. April 20, 2004).

Plaintiffs believe that they have a good case on the merits, based on the evidence obtained through extensive document discovery and investigation into the allegations of the Amended Complaint.  However, experts would be necessary to help establish the alleged violations of GAAP, the allegedly improper valuations of the assets in the Investment Portfolio, what steps a prudent fiduciary should have taken and by when, and what damages, if any, resulted from the alleged fiduciary breaches.  Thus, victory was far from assured.  As one court has held:

> In this "battle of experts," it is virtually impossible, for purposes of considering a settlement agreement, to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.  Uncertainties also exist with respect to both the fact and quantum of damages. Courts routinely acknowledge the difficulty in proving damages, particularly in the securities context, where reliance on experts is often necessary. Establishing damages likely requires extensive, costly and complex expert testimony.

*Cohn v. Nelson*, 375 F. Supp. 2d 844, 858 (E.D. Mo. 2005).  Plaintiffs here would face the same obstacles establishing liability and proving damages.

In addition to the risks of establishing liability and damages, the Court should balance the immediacy and certainty of a substantial recovery, against the delay, uncertainty and expense of continued litigation.  *In re Wireless*, 2004 U.S. Dist. LEXIS 23342, at *39-40.  Although the parties have already engaged in protracted litigation, at considerable expense, over the past two and one-half years, in the absence of a

Settlement, Class members would have to wait substantially longer before they obtain any relief, even assuming they are entirely successful and overcome every obstacle.  As aptly summarized by the *In re Wireless* court, "in contrast to the delay and uncertainty attendant with such litigation, the Settlement Agreement provides substantial and immediate benefits. The Court concludes this consideration weighs in favor of approval." *Id.*, at *40.

In weighing the potential benefits of the Settlement against the risks and delays of continued litigation, the Court should give weight to the fact that Class Counsel favor the Settlement and believe that it is in the best interests of the Class.  Class Counsel are intimately acquainted with the facts and have substantial expertise litigating precisely this type of ERISA class action and other complex cases.  Based on the discovery conducted and extensive motion practice, Class Counsel entered into the settlement discussions "fully apprised about the legal and factual issues presented as well as the strengths and weaknesses of their cases" and able to make "a well-informed decision to enter into the proposed Settlement agreement."  *In re Broadwing, Inc. ERISA Litig.*, No. 1:02-cv-00857, 2006 WL 3831382 (S.D. Ohio Oct. 5, 2006).  In these circumstances, the opinion of experienced Class Counsel is entitled to deference.  *Johnson*, 2003 WL 24015151, at *11; *Kogan*, 193 F.R.D. at 501; *Bowling*, 143 F.R.D. at 151 n.7.

## 2.    The Settlement is in the Public Interest

A final factor supporting the Settlement is that it is in the public interest. *Employee Benefit Plans*, 1993 U.S. Dist. LEXIS 21226, at *13.  It is in the public interest to resolve all such claims against MoneyGram globally, rather than through duplicative

and individual suits which would drain judicial resources while, at best, resolving only a

tiny fraction of all claims.  As stated in *In re Wireless*:

> The possible length and complexity of further litigation is a
> relevant consideration to the trial court in determine whether
> a class action settlement agreement should be affirmed . . . .
> If this Court were to reject this Settlement agreement, this
> single piece of litigation would likely drag on for years,
> require the expenditure of millions of dollars, all while the
> class members would receive nothing.

2004 U.S. Dist. LEXIS 23342, at *39-40.

## III.   THE PROPOSED SETTLEMENT NOTICE SATISFIES RULES 23(d) AND (e) AND DUE PROCESS REQUIREMENTS

In order to satisfy due process, notice to Class members must be "reasonably

calculated, under all the circumstances, to apprise interested parties of the pendency of

the action and afford them an opportunity to present their objections."   *Mullane v.*

*Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950).

Notice should also provide a fair description of the proposed settlement.  *Weinberger v.*

*Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982).

Class Counsel propose that two types of notice be sent to the Class:  (1) a long-

form Notice and (2) a Summary Notice.  The long-form Notice is attached as Exhibit A

and the Summary Notice is attached as Exhibit F, respectively to the Settlement

Agreement which in turn is attached as Exhibit 1 to the McKenna Decl.  Class Counsel

propose that the long-form Notice be mailed to the home addresses of the former and

current Plan participants on file with the Plan.  All of the members of the proposed Class

are either former or current employees of Defendant MoneyGram thus mailing the long-

form Notice to their home addresses is likely to be effective in reaching the vast majority,

if not all, of the Class.  Secondly, Plaintiffs propose to publish the Summary Notice in *Investors Business Daily*.  Further, Plaintiffs propose to have the Claims Administrator selected to administer the distribution of the Settlement monies establish a website dedicated to the proposed Settlement where details of the Settlement will also be found.  The long-form Notice and the Summary Notice will both contain links to this dedicated Settlement website.  Notice to the Class in these forms and manners fulfill any requirements of due process that may apply, comply with the Federal Rules of Civil Procedure, and inform Class members about the Settlement and their opportunity to appear and be heard at the Fairness Hearing.

As noted above, providing the long-form Notice to the Class in this case is fairly straightforward.  All Class members are current or former participants of the Plan.  MoneyGram and/or its present and former record keepers have the name and address of all or substantially all Class members.  Their names and addresses will be provided to Class Counsel to permit the rapid and efficient distribution of the Notice.  If experience is any guide, the vast majority of Class members will receive this mailed Notice promptly.

The substance of the Notice also presents no difficulty.  It describes in plain English the terms and operation of the Settlement, the considerations that caused Class Counsel to conclude that the Settlement is fair and adequate, the maximum Plaintiffs' Counsel fees and expenses that may be sought, the procedures for objecting to the Settlement and the date and place of the Fairness Hearing.  The Notice fairly apprises Class members of the Settlement and their options with respect thereto, and thus fully satisfies due process requirements.  *See, e.g.*, *Marshall v. Holiday Magic, Inc.*, 550 F.2d

1173, 1177 (9th Cir. 1977) (notice must only apprise class members of the subject matter of the suit, the proposed terms of the Settlement, and the members' opportunity to be heard).

## IV.   THE SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

While the parties have stipulated to conditional certification of the Class for Settlement purposes, such certification is, of course, subject to review by the Court. *See Weinberger*, 698 F.2d at 73. The Court must assure itself, even at this preliminary stage, that certification is proper under Rules 23(a) and (b). *Denny v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). All such requirements are here satisfied.

**Numerosity**: The numerosity requirement is satisfied in cases where the Class is made up of a large group of potential plaintiffs. *See, e.g.*, *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877 (6th Cir. 1997) (joinder would have been impracticable for proposed class of over 1,100 individuals). Here, according to the records of the Plan, the Plan had approximately 3,200 former and current participants who held the MoneyGram Stock Fund at any point during the Class Period. *See* McKenna Decl. at ¶ 25.

**Commonality**: Plaintiffs and all Class members are similarly situated in their need to answer the common questions posed by the Amended Complaint. *See, e.g.*, *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (The commonality requirement does not require commonality on every single question raised by a class action); *In re Ikon ERISA Litig.*, 191 F.R.D. 457, 464 (E.D. Pa. 2000) (finding that commonality requirement was satisfied in an ERISA breach of fiduciary duty case); *Rankin v. Rots*, 220 F.R.D. 511, 517-18 (E.D. Mich. 2004) (concluding that ERISA

breach of fiduciary duty claim "clearly presents a common issue"). Thus, the existence of the common questions requirement is easily satisfied.

**Typicality**: A proposed Class representative's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and her or his claims are based on the same legal theory." *Little Caesar Enter., Inc. v. Smith*, 72 F.R.D. 236, 243 (E.D. Mich. 1997). In this case, Plaintiffs' claims concerning their retirement account arise from the same events, course of conduct and legal theories as the claims of all Class members. This factor makes this case particularly appropriate for class certification since "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants." *Ikon*, 191 F.R.D. at 465; *see also Rankin*, 220 F.R.D. at 519 (noting representative nature of action under ERISA § 502(a)(2)).

**Adequacy**: Plaintiffs' are former MoneyGram employees and participants in the Plan who held the MoneyGram Stock Fund inside their Plan accounts. As such, their claims are identical to the legal claims belonging to all Class members, as they and Class members alike have an interest in showing that Defendants breached their fiduciary duties to the Plan from the allegedly imprudent investment of Plan assets in the MoneyGram Stock Fund and from the other alleged Plan-wide fiduciary breaches such as improper disclosures and the like. *See, e.g.*, *Thomas v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001) ("[B]ecause the named plaintiffs are challenging the same unlawful conduct and seeking the same relief as the rest of the class, I find that the interests of the named plaintiffs are sufficiently aligned with those of the class members to satisfy the

first prong of the adequacy of representation requirement"). Finally, Plaintiffs have no interests antagonistic to those of the other Class Members.

**Rule 23(b)(1)**: ERISA actions such as this action are properly brought under Rule 23(b)(1). *See, e.g.*, *Ikon*, 191 F.R.D. at 466 ("The court agrees that, given the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief . . . . There is also risk of inconsistent disposition that would prejudice the defendants").

Further, Rule 23(b)(1) classes are routinely certified as "mandatory classes," which means that individual class members are not permitted to exclude themselves from the class. Both the United States Supreme Court and courts across the country have repeatedly acknowledged that a court need not offer class members the right to opt out of a Rule 23(b)(1) class. This is so because Rule 23(b)(1) addresses claims, like those present here, where allowing the prosecution of separate actions by individual class members would risk either (1) harm to Defendants through the creation of inconsistent and conflicting standards of fiduciary conduct and/or (2) prejudice to the interests of Class members who would necessarily be bound by adjudications with respect to other class members. When the rationale for certification is a desire to avoid harm from separate suits, it would be fundamentally inconsistent to allow Class members the right to pursue separate claims.

Rule 23(b)(1) is designed to apply to classes comprised of members who possess homogenous interests. As a result, the procedural protections available to Rule 23(b)(1) class members differ from those that would apply, for example, in classes certified

pursuant to Rule 23(b)(3), where class members are presumed to have potentially diverging interests (and the court is specifically directed by the rule to investigate any varying interests). Indeed, the text of Rule 23 on its face requires that class members be given the right to opt out only for Rule 23(b)(3) classes. For the mandatory classes certified under Rule 23(b)(1) or (b)(2), any due process concerns are addressed through other mechanisms set forth in the rule, such as allowing all class members to receive notice of the proposed Settlement and giving them the right to voice any objections to the terms of the Settlement at the fairness hearing.

ERISA claims of the type asserted here are also well suited to certification under Rule 23(b)(1), as numerous courts have found. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (holding that certification of a Rule 23(b)(1) class is premised on the notion that "[t]he shared character of rights claimed or relief awarded entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members"); *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (noting that Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike . . . ") (internal citations omitted*); *Klender v. United States*, 218 F.R.D. 161, 167 (E.D. Mich. 2003). ERISA authorizes participants to sue on behalf of the plan for breach of fiduciary duty. These are not claims for individual damages suffered by each Plan participant, but rather claims under ERISA for recovery of the losses suffered by the Plan. The relief sought is, thus, by definition Plan-wide and presents a classic example of the type of equitable relief properly certified as a mandatory class. If the Settlement if approved, the Settlement funds will be turned over to the Plan

itself and only then allocated to the individual accounts of the Plan participants.  Separate

suits brought by individual Plan participants for the exact same losses allegedly suffered

by the Plan would present the very risks that Rule 23(b)(1) was designed to avoid –

namely, the risk of the establishment of incompatible standards of conduct for

Defendants and the risk that different rulings would substantially impair the interests of

absent Class members since Plaintiffs share the same rights as all Plan participants and

are standing in the shoes of the Plan, seeking to enforce rights owed to the Plan.

For these reasons, Plaintiffs believe that Rule 23(b)(1) presents the proper basis on

which to certify the proposed Settlement class.  As demonstrated herein, neither the text

of Rule 23 nor any case law interpreting its provisions requires this Court to provide

Class members with the right to exclude themselves.

**Rule 23(b)(2)**:  The ERISA claims which were asserted in this action are also

appropriate for class certification under Rule 23(b)(2)   A class may be certified under

Rule 23(b)(2) if:

> [T]he party opposing the class has acted or refused to act on
> grounds generally applicable to the class, thereby making
> appropriate final injunctive relief or corresponding
> declaratory relief with respect to the class as a whole[.]

Fed. R. Civ. P. 23(b)(2).  Courts have identified two requirements for proceedings under

Rule 23(b)(2).  First, the complaint must allege grounds generally applicable to the class.

Second, the plaintiffs must seek injunctive or declaratory relief.  *SmithKline*, 201 F.R.D.

at 397-98; *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir. 2001).  Where the

monetary damages aspect of a case is significant, a court may still certify a Rule 23(b)(2)

class where the "injunctive relief aspect is also potentially significant." *In re Universal Service Fund Telephone Billing Practices Litig.*, 219 F.R.D. 661, 680 (D. Kan. 2004).

As discussed above, the ERISA claims in this case rest on conduct that is generally applicable to the Class as a whole. The Amended Complaint alleged that Defendants breached their fiduciary duties by, among other things, (1) failing to prudently and loyally manage the Plan's investment in MoneyGram Stock (¶¶ 163, 166, 194, 195, 200, 202); (2) failing to provide complete and accurate information to participants regarding MoneyGram Stock and providing inaccurate information in Plan materials (¶¶ 79, 149, 171, 173, 174, 175, 178, 184, 185, 201, 202, 210, 212, 219); and (3) failing to appropriately monitor other fiduciaries in carrying out their ERISA fiduciary responsibilities (¶¶ 15, 54, 55, 149, 158, 182, 183, 184, 185, 187, 203). These fiduciary breaches affected all of the Plan's participants and beneficiaries; it cannot be disputed that this conduct was "generally applicable to the class." *See Amara v. CIGNA Corp.*, No. Civ.3:01CV2361 (DJS), 2002 WL 31993224, at *4 (D. Conn. Dec. 20, 2002) (claim for plan-wide relief under ERISA falls squarely within the purview of subsection (b)(2)); *LaFlamme v. Carpenters Local No. 370 Pension Plan*, 212 F.R.D. 448, 456-57 (N.D.N.Y. 2003) (certifying ERISA class under (b)(2) where the plaintiffs challenged the defendants' conduct generally applicable to the class and sought declaratory relief that defendants had violated ERISA); *Bunnion v. Consolidated Rail Corp.*, No. Civ. A. 97-4877, 1998 WL 372644, at *14 (E.D. Pa. May 14, 1998) (granting certification of (b)(2) class in ERISA breach of fiduciary duty case); *see also In re Delphi Corp. Sec.,*

*Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 495 (E.D. Mich. 2008) (certifying an ERISA class under both Rule 23(b)(1) and Rule 23(b)(2)).

In addition, although it is true that if the Settlement is approved, the Plan will ultimately allocate the Settlement funds to individual accounts within the Plan, no individual participant or beneficiary will receive funds directly as a result of the Settlement. A Plan participant has standing to assert the claims at issue here only on the Plan's behalf and only for Plan-wide relief. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) ("[T]he entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself"). ERISA does not allow individual participants to sue Plan fiduciaries directly under these provisions for any harm they personally suffered as a result of the decline in value of their respective retirement accounts. *See, e.g. In Re Merck & Co., Inc. Securities, Derivative & "Erisa" Litig..*, Civil Action Nos. 05-1151 (SRC), 05-2369(SRC), 2009 WL 331426, at *10 (D.N.J. Feb. 10, 2009) ("A Court adjudicating a suit by an individual plaintiff [must] determine the issues of the existence of the fiduciary duty and its breach not in relation to the individual plaintiff, but in relation to the entire plan"); *see also* ¶ 12 ("ERISA §§ 409(a) and 502(a)(2) authorize participants such as Plaintiff ***to sue in a representative capacity*** for losses suffered by the Plan . . . .") (emphasis added).

Accordingly, Plaintiffs respectfully request that this Court enter an Order preliminarily approving the proposed Settlement and conditionally certifying the Settlement Class as a non-opt-out class under Rules 23(a) and (b)(1) and (b)(2).

27

## V.      CONCLUSION

For the reasons set forth above, Class Counsel respectfully request that the Court grant preliminary judicial approval of the Settlement, preliminarily certify the Settlement Class, and direct that notice be made as provided for in the proposed Order Preliminarily Approving Settlement, which is annexed as Exhibit B to the Settlement Agreement which in turn is Exhibit 1 to the McKenna Decl.

Dated: October 13, 2010

**PERRY & PERRY, PLLP**

By: _s/Shawn M. Perry____
     Shawn M. Perry (#185000)
5401 Gamble Drive, Suite 270
Minneapolis, MN 55416
Telephone: (952) 546-3555
E-mail: shawn.perry@pppllp.com

***Proposed Liaison Counsel for Plaintiffs and the Class***

**GAINEY & McKENNA**
Thomas J. McKenna
295 Madison Avenue
New York, NY 10017
Telephone: (212) 983-1300
Facsimile: (212) 983-0383
Email: tjmckenna@gaineyandmckenna.com
        tjmlaw2001@yahoo.com

***Proposed Lead Counsel for Plaintiffs and the Class***