# EXHIBIT 1

THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DELILAH MORRISON and SHERRI ARGUELLO, On Behalf of Themselves And All Others Similarly Situated,<br><br>               Plaintiffs,<br><br>vs.<br><br>MONEYGRAM INTERNATIONAL, INC., *et al.*,<br><br>               Defendants. | **Civil Action: 08-cv-01121-PJS-JJG**<br><br><br>**CLASS ACTION SETTLEMENT AGREEMENT** |

This CLASS ACTION SETTLEMENT AGREEMENT ("*Settlement Agreement*") is entered into by and between *Named Plaintiffs* in the *Action*, for themselves and on behalf of the *Settlement Class*, on the one hand, and *Defendants*, on the other. Italicized and capitalized terms and phrases have the meanings provided in Section 1 below.

**RECITALS**

WHEREAS, *Named Plaintiffs* have commenced the *Action* asserting various claims for relief on behalf of the *Settlement Class* against *Defendants*, all of which claims are disputed by *Defendants*;

WHEREAS, the *Action* is pending before the Hon. Patrick J. Schiltz of the United States District Court for the District of Minnesota (the "*Court*");

WHEREAS, *Named Plaintiffs* filed a motion to certify a class with themselves as class representatives on April 30, 2010;

WHEREAS, the *Settling Parties* are desirous of promptly and fully resolving and settling with finality all of the *Released Claims* asserted by *Named Plaintiffs*, for themselves and on behalf of the *Settlement Class*, against *Defendants*;

WHEREAS, to accomplish that goal, the *Settling Parties* have reached a settlement by and through their respective undersigned counsel on the terms and conditions set forth in this *Settlement Agreement*;

NOW, THEREFORE, the *Settling Parties*, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

## 1.    DEFINITIONS

As used in this *Settlement Agreement*, italicized and capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1    *"Action"* shall mean: The case captioned *Morrison, et al. v. MoneyGram International, Inc., et al.*, Case No. 08-CV-1121, in the United States District Court for the District of Minnesota.

1.2    *"Agreement Execution Date"* shall mean: the date on which this *Settlement Agreement* is fully executed, as provided in Section 10.14 below.

1.3    *"Claims"* shall have the meaning of *Released Claims* set forth in Sections 4.3 and 4.4.

1.4    *"Class Counsel"* shall mean: Gainey & McKenna and Perry & Perry, PLLP.

-2-

1.5    *"Class Notice"* or *"Mailed Notice"* shall mean: the Notice of Class Action Settlement, attached hereto as Exhibit A, approved by the *Court* in the *Preliminary Approval Order*, and mailed to the last known address of all *Settlement Class* members.

1.6    *"Class Period"* shall mean:  the period from July 1, 2004, through the Agreement Execution Date.

1.7    *"Class Settlement Amount"* shall mean: Four Million Five Hundred Thousand Dollars ($4.5 million), paid by or on behalf of *Defendants* subject to reimbursement to the *Company* for various advances as set forth in paragraphs 3.2.3 and 7.7.

1.8    *"Company"* shall mean MoneyGram International, Inc. ("MGI") and its shareholders, affiliates, predecessors, and successors, including Thomas H. Lee Partners, and their respective *Representatives*.

1.9    *"Complaint"* shall mean:  the Amended Class Action Complaint filed on August 7, 2008, in the *Action.*

1.10   *"Defendants"* shall mean:  the following *Persons* named as defendants in the *Complaint*:  Philip W. Milne, Jess T. Hay, Linda Johnson Rice, Albert M. Teplin, Timothy R. Wallace, Monte E. Ford, Judith K. Hofer, Robert C. Krueger, Donald E. Kiernan, Douglas L. Rock, Othón Ruiz Montemayor, David J. Parrin, Anthony P. Ryan, The MoneyGram International, Inc. Pension and 401(k) Committee, its individual members from July 1, 2004 through the Agreement Execution date, the *Company*, and their respective *Representatives*.

1.11   *"Effective Date"* shall mean:  the date, established pursuant to Section 8.1, on which all of the conditions to settlement set forth in Section 3 of this *Settlement Agreement* have been fully satisfied or waived and the *Settlement* shall have become *Unconditional.*

1.12   *"ERISA"* shall mean:  the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated, and case law, thereunder.

1.13   *"Escrow Agent"* shall be the national bank selected by *Lead Counsel,* and approved by counsel for *Defendants,* to serve as the agent to hold the *Escrow Account.*

1.14   *"Escrow Account"* shall mean the escrow account into which the *Settlement Fund* shall be transferred for ultimate distribution to the *Plan,* and thereafter to the members of the *Settlement Class* as described in Sections 7 and 8 below.

1.15   *"Fairness Hearing"* shall have the meaning set forth in Section 3.2.4.

1.16   *"Federal"* shall mean Federal Insurance Company.

1.17   *"Final"* shall mean:  with respect to any judicial ruling or order, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review (*"Review Proceeding"*) has expired without the initiation of a *Review Proceeding,* or, if a *Review Proceeding* has been timely initiated, that there has occurred a full and final disposition of any such *Review Proceeding* without a reversal or any material modification, including the exhaustion of proceedings in any remand and/or subsequent appeal after remand.  Notwithstanding any other provision hereof, the *Final Order* shall be deemed *Final* regardless of whether the Court has

- 4 -

entered an order regarding the award of legal fees and expenses and *Named Plaintiffs'*

*Service Awards,* and regardless of whether any such order, if entered, has become *Final.*

    1.18   *"Final List"* shall mean:  a list of *Settlement Class* members to whom the

proceeds of the *Net Settlement Fund* will be distributed in accordance with the *Plan of*

*Allocation,* as set forth in Section 8.7.

    1.19   *"Final Order,"* or *"Order of Final Judgment and Dismissal,"* shall have the

meaning set forth in Section 3.2.4.

    1.20   *"Insurance Policies"* shall mean:  Executive Protection Portfolio Policy

Numbers 8209-8703, 8309-8704, and 6810-0489, issued by Federal Insurance Company

to MoneyGram International, Inc.

    1.21   *"Independent Fiduciary"* shall mean: Evercore Trust Company.

    1.22   *"Lead Counsel"* shall mean:  Gainey & McKenna.

    1.23   *"Liaison Counsel"* shall mean: Perry & Perry, PLLP.

    1.24   *"Mailed Notice"* or *"Class Notice"* shall mean:  the Notice of Class Action

Settlement, attached hereto as Exhibit A, approved by the *Court* in the *Preliminary*

*Approval Order,* and mailed to the last known address of all *Settlement Class* members.

    1.25   *"Named Plaintiffs"* shall mean:  the following persons, as plaintiffs on

behalf of themselves and all members of the *Settlement Class*:  Delilah Morrison, Sherri

Arguello, and each of their *Successors-In-Interest. Named Plaintiffs* intend that all rights

and obligations that are binding on *Named Plaintiffs* under this *Settlement Agreement,*

including each and every covenant, agreement, and warranty, also shall be binding on all

members of the *Settlement Class.*

1.26   *"Named Plaintiffs' Service Award"* means the requested amount, not more

than $10,000.00 per *Named Plaintiff,* which shall be paid from the *Settlement Fund* to

each *Named Plaintiff* in recognition of the benefits each has generated for the *Settlement*

*Class* by coming forward and devoting time and knowledge to the prosecution of the

*Action.* Any such awards shall be subject to the approval of the Court upon notice to the

*Settlement Class* as set forth in Section 8.4 below.

1.27   *"Net Settlement Amount"* or *"Net Settlement Fund"* shall have the meaning

set forth in Section 8.6.

1.28   *"Order of Final Judgment and Dismissal,"* or *"Final Order,"* shall have the

meaning set forth in Section 3.2.4.

1.29   *"Person"* shall mean:  an individual, partnership, corporation, governmental

entity or any other form of entity or organization.

1.30   *"Plaintiffs' Released Parties"* shall have the meaning set forth in Section

4.6.

1.31   The *"Plan"* shall mean:  the MoneyGram International, Inc. 401(k) Plan.

1.32   *"Plan of Allocation"* shall mean:  the plan or formula of allocation of the

*Net Settlement Fund,* substantially in the form set out in Exhibit D, whereby the *Net*

*Settlement Fund* shall be distributed for the benefit of the *Settlement Class,* as discussed

in Section  8.5 below.

1.33   *"Preliminary Approval Order"* shall have the meaning set forth in Section

3.2.1.

1.34   *"Preliminary Motion"* shall have the meaning set forth in Section 3.2.1.

1.35   *"Recordkeepers"* shall mean: T. Rowe Price Retirement Plan Services, Inc., Wells Fargo Bank, NA, or any other entity the *Company* retains to perform recordkeeping services for the *Plan*.

1.36   *"Released Claims"* shall have the meaning set forth in Section 4.3 and 4.4.

1.37   *"Releasees"* shall mean: (i) *Defendants*; (ii) Fiduciary Counselors, Inc.; (iii) any person or entity that is claimed to have had a fiduciary or other service provider relationship with respect to the *Plan*, including but not limited to T. Rowe Price Trust Company, the *Recordkeepers*, and the *Trustee*; and (iv) the predecessors, successors, parents, subsidiaries, related entities, shareholders, and *Representatives* of the parties named in parts (i), (ii), and (iii) of this paragraph.  Any released parties who are not parties to this agreement are intended to be third party beneficiaries and are entitled to enforce the releases herein.

1.38   *"Releases"* shall mean the releases set forth in Section 4.3, 4.4, and 4.6.

1.39   *"Representatives"* shall mean: representatives, employees, contractors, consultants, advisors, accountants, attorneys, and agents.

1.40   *"Settlement"* shall mean: the settlement to be consummated under this *Settlement Agreement* pursuant to the *Final Order*.

1.41   *"Settlement Agreement"* or *"Agreement"* means this Class Action Settlement Agreement.

1.42   *"Settlement Class"* shall mean:  All persons (other than Defendants or members of the MoneyGram International, Inc. Pension & 401(k) Committee (the "401(k) Committee") and their beneficiaries, alternate payees (including spouses) and

successors-in-interest) who both (i) were participants in or beneficiaries of the *Plan* at any time during the period starting on July 1, 2004, through October 7, 2010 and (ii) as part of their participation in the *Plan*, held Employer Stock within the Employer Stock Fund, as those terms are defined in the *Plan*; and as to each such *Person*, his, her, or its beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), and *Successors-In-Interest*.

1.43    "*Settlement Fund*" shall have the meaning set forth in Section 7.1 below.

1.44    "*Settling Parties*" shall mean: *Named Plaintiffs* and *Defendants*.

1.45    "*Stipulated Dismissal*" shall mean the stipulated dismissal with prejudice of the *Action* against *Defendants*.

1.46    "*Successor-In-Interest*" shall mean: a *Person's* estate, legal representatives, heirs, successors or assigns.

1.47    "*Summary Notice*" shall mean: the Summary Notice of Class Action Settlement, attached hereto as Exhibit F, approved by the *Court* in the *Preliminary Approval Order*, and published in the Investors Business Daily.

1.48    "*Trustee*" shall mean: Wells Fargo Bank, NA or any other entity the *Company* retains to serve as trustee for the *Plan*.

1.49    "*Unconditional*" shall have the meaning set forth in Section 3 below.

## 2.    CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

2.1    For purposes of this settlement only, the *Parties* stipulate to the conditional certification of the *Settlement Class* as a non-opt out class under Fed. R. Civ. P. 23(b)(1) and 23(b)(2).

2.2     The *Settlement Class* will be conditionally certified pursuant to Rule 23(b)(1) and 23(b)(2) for purposes of this *Settlement Agreement.*

2.3     *Settlement Class* members will not have the right to opt out of the *Settlement Class.*

2.4     *Named Plaintiffs* will be conditionally appointed class representatives, and *Lead Counsel* will be conditionally appointed *Lead Counsel* for the *Settlement Class.*

2.5     At the hearing to preliminarily approve the *Settlement Agreement, Class Counsel* shall present such evidence as they deem necessary and sufficient to justify the *Court's* certification of the Class under Rule 23, Plaintiffs' appointment as class representatives, and *Lead Counsel's* appointment as *Lead Counsel* for the *Settlement Class.*

2.6     *Defendants* agree to the conditional certification of the *Settlement Class* only for the purpose of effectuating the *Settlement Agreement. Defendants* reserve their right to object to the propriety of class certification and to the appointment of *Named Plaintiffs* as class representatives in this *Action* in all other contexts and for all other purposes.

2.7     The certification of the *Settlement Class* shall be binding only with respect to the settlement of this *Action.* In the event that the *Settlement Agreement* is terminated pursuant to its terms or is not approved in all material respects by the *Court,* or is reversed, vacated, or modified in any material respect by the *Court* or any other court, the certification of the *Settlement Class* shall be vacated, the *Action* shall proceed as though

the *Settlement Class* had never been certified, and no reference to the prior *Settlement Class* or any documents related thereto shall be made for any purpose.

3.    **CONDITIONS TO FINALITY OF THE SETTLEMENT**

3.1    Final and Unconditional Settlement. The *Settlement* provided for in this *Settlement Agreement* shall be final and unconditional ("*Unconditional*") when each of the following conditions has been satisfied or waived:

3.2    Court Approval. The *Settlement* shall have been approved by the *Court*, as provided for in this Section 3. *Lead Counsel* shall move the *Court* for an order and judgment approving this *Settlement Agreement* and the *Settlement* contemplated hereunder. The *Settling Parties* agree to recommend to the *Court* that such order and judgment be entered, and to cooperate in good faith, including by taking all steps and efforts contemplated by this *Settlement Agreement* and any other steps or efforts which may become necessary by order of the *Court* (unless such order materially modifies the terms of this *Settlement Agreement*) to carry out this *Settlement Agreement*, including the following:

3.2.1    Motion for Preliminary Approval of Settlement and of Notices. As soon as reasonably possible upon the full execution of this *Settlement Agreement* by the *Settling Parties*, *Named Plaintiffs* will file a motion ("*Preliminary Motion*") with the *Court* seeking an order substantially in the form annexed hereto as Exhibit B (the "*Preliminary Approval Order*");

3.2.2    Issuance of Class Notice. No later than three (3) calendar days after issuance of the *Preliminary Approval Order*, the Company shall request that the

- 10 -

*Recordkeepers* provide directly to *Lead Counsel* or *Lead Counsel's* designee a list (in

electronic form) containing the names and current or last known addresses of all persons

believed to be *Settlement Class* members. On the date and in the manner set by the Court

in the *Preliminary Approval Order, Lead Counsel* shall cause (i) the *Class Notice* to be

transmitted in the form and manner approved by the *Court* to the *Persons* as directed by

the *Court* in the *Preliminary Approval Order*; (ii) the *Summary Notice* to be published in

the Investors Business Daily; and (iii) a settlement website to be set up and made live that

includes, among other things: a copy of the *Settlement Agreement*, Frequently Asked

Questions and the answers to those questions, and contact information, including a toll-

free number where *Settlement Class* members can obtain additional information.

   3.2.3   Independent Fiduciary. The *Independent Fiduciary*, which has no relation

to or interest in any of the *Settling Parties*, shall ensure compliance with Prohibited

Transaction Class Exemption 2003-39. In so doing, the *Independent Fiduciary* will make

determinations as to whether: (i) the *Settlement* is reasonable in light of the *Plan's*

likelihood of full recovery, the risks and costs of litigation, and the value of the claims

foregone; (ii) the terms and conditions of the transaction are no less favorable to the *Plan*

than comparable arms-length terms and conditions that would have been agreed to by

unrelated parties under similar circumstance; and (iii) the transaction is not part of an

agreement, arrangement, or understanding designed to benefit a party in interest. The

*Company* shall advance payment of any invoices and statements submitted by the

*Independent Fiduciary* and its agents prior to the deposit of the *Settlement Fund* into the

*Escrow Account*. The *Escrow Agent* shall reimburse the *Company* for such expenses

- 11 -

upon creation of the *Escrow Account*, pursuant to Section 7.7 and subject to the restriction stated therein. After the deposit of the *Settlement Fund into the Escrow Account*, invoices and statements submitted by the *Independent Fiduciary* and its agents shall be paid directly out of the *Settlement Fund* as they become due, subject to the restriction stated in Section 7.7. The *Settlement* will be contingent on the *Independent Fiduciary's* approval. All *Settling Parties* shall cooperate in providing such information to the *Independent Fiduciary* as may be required or requested.

3.2.4   The Fairness Hearing. On or after the date set by the *Court* for the hearing (the "*Fairness Hearing*") the *Court* will determine whether to enter judgment finally approving the Settlement, substantially in the form attached hereto as Exhibit C (which judgment is referred to herein as the "*Final Order*" or the "*Order of Final Judgment and Dismissal*"). At the *Fairness Hearing, Lead Counsel* will urge the Court to enter the *Final Order.* At that time, *Lead Counsel* will also request that the Court enter orders approving the proposed *Plan of Allocation,* awarding attorneys' fees and expenses, and awarding *Named Plaintiffs' Service Awards. Defendants* will urge the Court to enter the *Final Order,* but will take no position concerning the *Plan of Allocation, Class Counsel*'s request for legal fees and expenses, or *Class Counsel's* request for *Named Plaintiffs' Service Awards.* The *Settling Parties* agree to support entry of the *Final Order* as contemplated by this Section 3. The *Settling Parties* covenant and agree that they will reasonably cooperate with one another in obtaining the *Final Order* as contemplated hereby at the *Fairness Hearing* and will not do anything inconsistent with obtaining the *Final Order.*

3.2.5   Finality of Order of Final Approval of Settlement.   The Court shall have issued the *Final Order* and the *Final Order* shall have become *Final*, provided that the *Final Order* shall be deemed *Final* regardless of whether the Court has awarded attorneys' fees and expenses and regardless of whether the Court has awarded *Named Plaintiffs' Service Awards.*

3.3   Dismissals of Claims.   The *Action* and all *Released Claims* shall have been dismissed with prejudice as against *Defendants.*

3.4   Funding of Settlement Fund.   A *Settlement Fund* in the amount of the *Class Settlement Amount* shall be created by *Defendants* or on their behalf, which should be deposited in the *Escrow Account* at the time prescribed by, and otherwise as provided for, in Section 7.

## 4.   RELEASES AND COVENANT NOT TO SUE

4.1   Release of Claims by the Plan.   Upon the *Effective Date,* the *Plan,* by and through the *Independent Fiduciary* retained pursuant to Section 3.2.3, and by operation of the *Final Order,* both on the *Plan's* own behalf and on behalf of all *Plan* participants who are members of the *Settlement Class,* absolutely and unconditionally releases and forever discharges each and all of the *Releasees* from *Released Claims* that the *Plan* directly, indirectly, derivatively, or in any other capacity every had, now has, or hereafter may have. Nothing herein, however, shall preclude any action or claim related to the implementation and/or enforcement of this *Settlement Agreement.*

4.2   Release of Claims by the Settlement Class.   Effective upon the entry of the *Final Order* by the *Court, Named Plaintiffs,* on behalf of themselves and on behalf of the

*Settlement Class*, absolutely and unconditionally release and forever discharge the

*Releasees* from *Released Claims* that *Named Plaintiffs* or the *Settlement Class* directly,

indirectly, derivatively, or in any other capacity ever had, now have or hereafter may

have. Nothing herein, however, shall preclude any action or claim related to the

implementation and/or enforcement of this *Settlement Agreement*.

      4.3    Released Claims. Subject to Section 4.4 below, the *Released Claims* shall

be: any and all claims of any nature whatsoever (including claims for any and all losses,

damages, unjust enrichment, attorneys' fees, disgorgement of fees, litigation costs,

injunction, declaration, contribution, indemnification or any other type or nature of legal

or equitable relief), whether accrued or not, whether already acquired or acquired in the

future, whether known or unknown, in law or equity, brought by way of demand,

complaint, cross-claim, counterclaim, third-party claim or otherwise (collectively,

"*Claims*") (i) which were or could have been asserted in the *Complaint* or that would be

barred by principles of *res judicata* had the claims asserted in the *Complaint* been fully

litigated and resulted in a *Final* judgment or order or (ii) that relate to, arise out of, or in

any way involve the company stock investment option in the Plan from July 1, 2004 to

the Agreement Execution Date; the appointment and retention of Fiduciary Counselors,

Inc.; the appointment and retention of the members of the MoneyGram International, Inc.

Pension and 401(k) Committee; or any disclosures or non-disclosures in connection

therewith. The *Settling Parties* stipulate and agree that, by the terms of the *Final Order*,

the *Plan* and each *Settlement Class* member shall have and be deemed to have waived

and relinquished, to the fullest extent permitted by law, any and all provisions, rights and

benefits conferred by Section 1542 of the California Civil Code or any federal, state, or

foreign law, rule, regulation or common law doctrine that is similar, comparable,

equivalent, or identical to, or which has the effect of, Section 1542 of the California Civil

Code, which provides:

> A general release does not extend to claims which the creditor
> does not know or suspect to exist in his favor at the time of
> executing the release, which if known by him must have
> materially affected his settlement with the debtor.

Notwithstanding the provisions of Section 1542 and any similar provisions, rights and

benefits conferred by any law, rule, regulation or common law doctrine of California or

in any federal, state or foreign jurisdiction, the *Settling Parties* understand and agree that

the releases to be given pursuant to this *Settlement Agreement* shall include *Released*

*Claims* that are not known or suspected to exist at the time such releases are given.

Nothing herein, however, shall preclude any action or claim related to the implementation

and/or enforcement of this *Settlement Agreement*.

    4.4    <u>Persons and Claims Not Released</u>. Nothing in this *Settlement Agreement*

releases or shall be deemed to release any *Person* or *Claims* other than as set forth in the

express terms and provisions of this *Settlement Agreement*. The *Releases* expressly do

not include, and this *Settlement Agreement* does not in any way bar, limit, waive, or

release, any individual claim by a *Named Plaintiff* or a member of the *Settlement Class* to

vested benefits that are otherwise due under the terms of the *Plan*.

    4.5    <u>Covenants Not to Sue.</u> Effective upon the entry of the *Final Order* by the

*Court*, *Named Plaintiffs* covenant and agree on their own behalf and on behalf of the

- 15 -

*Settlement Class*: (i) not to file against any *Releasee* any *Claim* based on or arising from any *Released Claim*; (ii) that the foregoing covenants and agreements shall be a complete defense to any such *Claims* against any of the respective *Releasees*; and (iii) should *Named Plaintiffs* file against any *Releasee* any *Claim* based on or arising from any *Released Claim*, they shall be liable for any attorneys fees any *Defendant* incurs in connection with such a *Claim*. Nothing herein, however, shall preclude any action or claim related to the implementation and/or enforcement of this *Settlement Agreement*.

    4.6    Covenants Not to Sue. Effective upon the entry of the *Final Order* by the *Court*, *Defendants* absolutely and unconditionally release and forever discharge the *Named Plaintiffs*, the *Settlement Class* and *Class Counsel* (collectively, the *Plaintiffs' Released Parties*) from any and all Claims relating to the institution or prosecution of the Action or the settlement of any *Released Claims*, except that the release shall not include claims relating to the covenants or obligations set forth in this *Settlement Agreement*. The *Settling Parties* intend the Settlement to be a final and complete resolution of all disputes asserted or which could have been asserted by *Named Plaintiffs*, the *Settlement Class*, the *Plan* and *Class Counsel* against the *Releasees* with respect to the *Released Claims*. Accordingly, *Named Plaintiffs* and *Defendants* agree not to assert in any forum that the claims asserted in the Action were brought or defended in bad faith or without a reasonable basis. The *Settling Parties* shall not assert any contention regarding a violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense or settlement of the Action and agree that, except as expressly set forth herein, each party shall bear his, her or its own costs and expenses, including attorney's fees.

## 5.     REPRESENTATIONS AND WARRANTIES

5.1     Settling Parties' Representations and Warranties. The *Settling Parties*, and each of them, represent and warrant:

5.1.1   That they are voluntarily entering into this *Settlement Agreement* as a result of arm's-length negotiations among their counsel, that in executing this *Settlement Agreement* they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof, and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this *Settlement Agreement* by any representations, statements or omissions pertaining to any of the foregoing matters by any party or by any person representing any party to this *Settlement Agreement*. Each *Settling Party* assumes the risk of mistake as to facts or law; and

5.1.2   That they have carefully read the contents of this *Settlement Agreement*, and this *Settlement Agreement* is signed freely by each individual executing this *Settlement Agreement* on behalf of each of the *Settling Parties*. The *Settling Parties*, and each of them, further represent and warrant to each other that he, she or it has made such investigation of the facts pertaining to the *Settlement*, this *Settlement Agreement* and all of the matters pertaining thereto, as he, she or it deems necessary.

5.2     Signatories' Representations and Warranties. Each individual executing this *Settlement Agreement* on behalf of any *Settling Party* does hereby personally

- 17 -

represent and warrant to the other *Settling Parties* that he or she has the authority to

execute this *Settlement Agreement* on behalf of, and fully bind, each principal which such

individual represents or purports to represent.

## 6.   NO ADMISSION OF LIABILITY

6.1     The *Settling Parties* understand and agree that this *Settlement Agreement*

embodies a compromise settlement of disputed claims, and nothing in this *Settlement*

*Agreement*, including the furnishing of consideration for this *Settlement Agreement*, shall

be deemed to constitute any finding of wrongdoing by any of *Defendants*, give rise to any

inference of wrongdoing or admission of wrongdoing or liability in this or any other

proceeding, constitute any finding of fiduciary status under ERISA, or give rise to any

inference of fiduciary status under ERISA. This *Settlement Agreement* and the payments

made hereunder are made in compromise of disputed claims and are not admissions of

liability of any kind, whether legal or factual. Moreover, *Defendants* specifically deny

any such liability or wrongdoing. Neither the fact nor the terms of this *Settlement*

*Agreement* shall be offered or received in evidence in any action or proceeding for any

purpose, except in an action or proceeding to enforce this *Settlement Agreement* or arising

out of or relating to the *Final Order*.

## 7.   THE SETTLEMENT FUND; DELIVERIES INTO THE SETTLEMENT FUND; INTERIM COSTS OF NOTICE AND INDEPENDENT FIDUCIARY

7.1     A settlement fund in the amount of the *Class Settlement Amount* (the

"*Settlement Fund*") will be created by or on behalf of the *Defendants*. In no event shall

the *Settlement Fund* be required to exceed this amount, and in no event shall *Defendants*

- 18 -

be required to make payments or incur any (non-repaid) expenses in excess of this amount.

7.2     Within fourteen (14) calendar days after the *Court* has entered the *Preliminary Approval Order*, the *Settlement Fund* will be deposited in the *Escrow Account* on *Defendants'* behalf. The *Escrow Account* shall be governed by the terms of an escrow agreement substantially in the form attached hereto as Exhibit E ("*Escrow Agreement*").

7.3     Upon transfer of the *Settlement Fund* into the *Escrow Account* as set forth in section 7.2 above, the *Escrow Agent* shall not disburse the *Settlement Fund* except as provided for in the *Settlement Agreement*, the *Final Order*, the terms of the *Escrow Agreement*, or with prior written agreement of counsel for *Defendants*, *Lead Counsel*, and *Federal*.

7.4     Subject to further orders and/or directions as may be made by the *Court*, the *Escrow Agent* is authorized to execute such transactions as are consistent with the terms of the *Final Order*, this *Settlement Agreement*, and/or the *Escrow Agreement*.

7.5     All funds held in the *Escrow Account* shall be deemed to be in the custody of the *Court* and shall remain subject to the jurisdiction of the *Court* until such time as the funds are distributed or are returned to the persons paying the same pursuant to the *Final Order* and/or the *Escrow Agreement*.

7.6     Provided that the *Settlement* receives *Preliminary Approval*, the *Escrow Agent* shall pay the reasonable fees and expenses of any third party claims administrator retained by the *Named Plaintiffs* to implement *Class Notice*, the *Plan of Allocation*, or

- 19 -

provide other administrative services, as they become due, without further order of the *Court*, provided such fees and expenses are approved by *Lead Counsel*, counsel for *Defendants*, and *Federal*. The amounts paid under this provision shall not exhaust the $75,000 limit described in Section 7.7.

7.7    Provided that the *Settlement* receives *Preliminary Approval*, the *Escrow Agent* shall pay all reasonable fees and expenses of the *Independent Fiduciary*, *Trustee*, and *Recordkeepers*, as well as all reasonable fees and expenses incurred by *Defendants* for payments made to such third parties (collectively, *"Third Party Fees and Expenses"*), in connection with the implementation of this *Settlement Agreement*, up to a maximum of seventy-five thousand dollars ($75,000) in total for all such *Third Party Fees and Expenses* without further order of the *Court*.

7.8    Immediately following the *Effective Date*, upon notice to the *Escrow Agent* from *Lead Counsel*, the *Escrow Agreement* shall be revised to remove *Defendants* and *Federal* from the *Escrow Agreement* and counsel for *Defendants* and *Federal* shall no longer be a signatory to the *Escrow Agreement*. At that time, the *Escrow Agent's* reporting obligations shall be solely to *Lead Counsel*.

## 8.    DISTRIBUTION OF NET SETTLEMENT FUND AND PLAN OF ALLOCATION

8.1    The *Effective Date* of the *Settlement* occurs when each and every condition in Section 3 has been satisfied. Any disputes as to whether the *Effective Date* has occurred shall be resolved by the *Court* upon the request of any of the *Settling Parties*.

- 20 -

8.2    Except as provided in Sections 7.6, 7.7, and 8.3, no distribution of any part, or all, of the *Settlement Fund,* shall be made from the *Settlement Fund* until the *Effective Date* has occurred.

8.3    No later than fourteen (14) days prior to the *Fairness Hearing, Class Counsel* shall submit an application to the Court for an award of attorneys' fees for legal services rendered, plus reimbursement of their expenses incurred in connection with the *Action.* Such attorneys' fees and expenses as are awarded by the *Court* shall be immediately payable to *Lead Counsel* out of the *Settlement Fund* after the *Court's* entry of both the *Final Order* and an order awarding such attorneys' fees and expenses, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, so long as *Lead Counsel* provides *Federal* with security for repayment and receives from *Federal* written approval that the security is sufficient and such written approval shall not be unreasonably withheld by *Federal.* In the event that the *Effective Date* does not occur, or the *Order* allowing the payment of attorney's fees and expenses is reversed or modified on appeal, and in the event that fees and expenses have been paid *Lead Counsel* to any extent, *Lead Counsel* shall within ten business days of receiving notice from *Defendants'* counsel, or from the court of appropriate jurisdiction, refund to the *Settlement Fund* all of the fees, expenses, and costs previously paid to *Lead Counsel* from the *Settlement Fund* plus interest thereon at the same rate earned on the *Settlement Fund.*

8.3.1 *Defendants* will take no position with respect to any application for attorneys' fees and expenses to be paid out of the *Settlement Fund*, the amount of which will not exceed one-third of the *Class Settlement Amount.*

8.3.2 The effectiveness of this *Settlement* is not contingent upon the Court awarding *Class Counsel* attorneys' fees or expenses, and the *Settlement* shall become *Unconditional* when all of the conditions in Section 3 are satisfied or waived, regardless of the amount of any fees or expenses approved by the *Court.* Apart from their responsibility for funding the *Settlement Fund,* in no event shall *Defendants* or *Releasees* be responsible in any way for the payment of any of *Class Counsel's* attorneys' fees or expenses, regardless of the amount of any fees or expenses approved by the *Court,* and regardless of any termination of this *Settlement Agreement.*

8.4     Service Awards for Named Plaintiffs

8.4.1 No later than ten (10) business days prior to the *Fairness Hearing, Class Counsel* shall submit an application to the *Court* for *Named Plaintiffs' Service Awards,* which shall not exceed $10,000.00 per *Named Plaintiff.* The *Named Plaintiffs' Service Awards* shall be payable from the *Settlement Fund* and shall be in addition to any portion of the *Class Settlement Amount* the *Named Plaintiffs* would otherwise be entitled to receive as a member of the *Settlement Class*.

8.4.2 Defendants will take no position with respect to any application for *Named Plaintiffs' Service Awards* to be paid out of the common fund.

8.5     Plan of Allocation. Concurrently with the filing of the *Preliminary Motion,* the *Named Plaintiffs* will propose the *Plan of Allocation* to the Court, substantially in the

form attached hereto as Exhibit D, which the *Court* may approve in its discretion, after consideration at the *Fairness Hearing*.

    8.6    Within seven (7) calendar days after the *Effective Date*, the *Escrow Agent* shall make disbursements from the *Settlement Fund* (i) to *Class Counsel* for any attorney fee awards made by the *Court*, as well as to reimburse *Class Counsel* for any costs or expenses approved by the *Court*; (ii) to the *Independent Fiduciary* for the reimbursement of costs and fees (including his counsel) not otherwise already paid, subject to the restriction stated in Section 7.7; (iii) to the *Escrow Agent* for payment of all taxes incurred by the *Escrow Account*, and all reasonable expenses and fees incurred by the *Escrow Agent*; (iv) to the *Recordkeepers* and *Trustee* for payment of all reasonable fees and expenses, subject to the restriction stated in Section 7.7, they have charged or will charge for services relating to the *Settlement*, including but not limited to any charges related to the creation of new accounts for *Settlement Class* members who are no longer participants in the *Plan*; (v) to the *Named Plaintiffs* for the *Service Awards* identified in Section 8.4; and (vi) for payment of any other expenses contemplated under this *Settlement Agreement*. After the disbursements in clauses (i), (ii) (iii), (iv), (v) and (vi) of this paragraph are made, the balance of the *Settlement Fund* (the "*Net Settlement Fund*") shall be transferred to the *Plan* for distribution in accordance with the *Plan of Allocation* approved by the *Court* and as provided further below. *Class Counsel* and *Settlement Class* members shall look solely to the *Settlement Fund* for settlement and satisfaction of any and all *Released Claims*.

8.7     Prior to disbursement of the *Net Settlement Fund* by the *Escrow Agent* to the *Plan, Class Counsel* shall provide to the *Trustee* and *Company* a "*Final List*" of *Settlement Class* members, in electronic format, to whom the proceeds of the *Net Settlement Fund* will be distributed in accordance with the *Plan of Allocation*. The *Final List* shall include the current address of each *Settlement Class* member. *Class Counsel* shall make reasonable efforts to verify the accuracy of the *Final List* including, where appropriate, checking available computer directory databases and/or using the services of a search agency. This *Final List* provided by *Class Counsel* shall be final, and only persons on the list shall receive any recovery from this *Settlement*. The *Trustee* and *Defendants* shall be entitled to rely on this *Final List* and shall not be liable for any determination as to the identity of members of the *Settlement Class*.

8.8     Prior to disbursement of the *Net Settlement Fund* by the *Escrow Agent* to the *Plan*, the *Company* shall direct the *Recordkeepers* to provide to the *Claims Administrator* the data necessary to determine the amount to be distributed to each *Settlement Class* member in accordance with the *Plan of Allocation*, and the *Claims Administrator* shall make such determination, subject to the approval of *Lead Counsel*. Neither the *Recordkeepers* nor *Defendants* shall have any liability for any actions taken in connection with the disbursement of the *Net Settlement Fund* or the execution of the *Plan of Allocation*.

8.9     After the distribution of the *Net Settlement Amount* into *Settlement Class* members' individual accounts, the *Settlement Class* members' individual accounts shall be subject to all the terms of the *Plan*, including terms that may mandate withdrawal

based on the amount of assets held in the account. The *Company* and *Trustee* may rely on the addresses contained in the *Final List* to send notices relating to any mandatory withdrawals. If any addresses contained in the *Final List* are not valid, the *Company* or *Trustee* shall notify *Class Counsel*, who shall make all reasonable efforts to locate the lost *Settlement Class* member, and shall notify the *Company* and *Trustee* once the lost *Settlement Class* member is located. The *Company* shall direct the *Recordkeepers* to provide *Class Counsel* or *Class Counsel's* designee, in good faith, all reasonable and available information needed to identify potential *Settlement Class* members. If after such reasonable efforts, the *Settlement Class* member cannot be found, the *Settlement Class* member's account shall be forfeited and used to pay costs and expenses related to effectuation of the *Settlement*.

8.10    All reasonable fees and expenses incurred by *Defendants* for payments made to third parties, such as the *Plan's Trustee* or *Recordkeepers*, in connection with the identification of *Settlement Class* members and the implementation of the *Plan of Allocation* shall be considered as expenses, and shall be paid or reimbursed solely out of the *Settlement Fund*, subject to the restriction stated in Section 7.7. No decision by the *Court* that modifies the formula prescribed in the *Plan of Allocation* or the form of *Class Notice* shall affect the validity of the *Settlement Agreement* or the finality of the *Settlement* in any manner.

8.11    The *Settling Parties*, without admitting any liability, intend that the disbursement of the *Settlement Fund* and the *Net Settlement Fund* shall be treated, for

federal income tax purposes, as a "restorative payment" within the meaning of Internal Revenue Service Revenue Ruling 2002-45, 2002-2 C.B. 116 (June 26, 2002).

8.12   The *Escrow Agent* shall, to the extent practicable, invest the *Escrow Account* in discrete and identifiable instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates. The *Escrow Agent* shall maintain records identifying in detail and with specificity each instrument in which the *Escrow Account* or any portion thereof has been invested, and identifying the precise location (including safe deposit box number) of each such instrument, and shall make such records or copies thereof promptly available at the request of the *Settling Parties* or their counsel. Neither the *Settlement Fund* nor any portion thereof shall be commingled with or invested together with any other monies or funds in any instruments. Any cash portion of the *Settlement Fund* not invested in instruments of the type described in the first sentence of this paragraph shall be maintained by the *Escrow Agent*, and not commingled with any other funds or monies, in a federally insured bank account, which shall promptly be identified to the *Settling Parties* at their request by bank name and address, account number, and any other identifying information. The *Escrow Agent* shall bear all risks related to investment of the *Settlement Fund*.

8.13   The *Settling Parties* agree that the *Settlement Fund* shall be a "qualified settlement fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), and any Treasury Regulations promulgated thereunder,

and that the Escrow Agent, as administrator of the Qualified Settlement Fund within the

meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing

tax returns for the *Escrow Account* and paying from it any taxes owed with respect to the

*Escrow Account. Defendants'* counsel agrees to provide promptly to the *Escrow Agent*

the statement described in Treasury Regulation § 1.468B-3(e).  Neither *Defendants* nor

their counsel shall have any liability or responsibility of any sort for filing any tax returns

or paying any taxes with respect to the *Escrow Account*.

8.14    All (i) taxes on the income of the *Escrow Account*, and (ii) expenses and

costs incurred in connection with the taxation of the *Escrow Account* (including, without

limitation, expenses of tax attorneys and accountants) shall timely be paid by the *Escrow*

*Agent* out of the *Escrow Account* subject to the approval of *Lead Counsel.*

8.15    *Plaintiffs* and the *Settlement Class* members acknowledge that no *Releasee*

has any responsibility for any filings with respect to, or payment of any taxes due on, the

funds that become the *Settlement Fund* or the *Net Settlement Fund* or that any person or

entity receives from the *Settlement Fund*. Nothing herein shall constitute an admission or

representation that any such taxes will or will not be due.

9.      **TERMINATION OF THE SETTLEMENT AGREEMENT**

9.1    Termination.  This *Settlement Agreement* may automatically terminate or be

terminated by the *Settling Parties*, and thereupon become null and void, in the following

circumstances:

9.1.1   If the *Independent Fiduciary* declines to approve this *Settlement* as described herein or as modified by agreement of all the parties, then this *Settlement Agreement* shall automatically terminate, and thereupon become null and void.

9.1.2   If any Party gives notice of its intention to withdraw to the other Parties within ten (10) business days (or any additional time period agreed to by the Parties) of the occurrence of either of the following events: (i) the Court declines to enter the Preliminary Approval Order in a form substantially identical in all material respects to that attached as Exhibit B hereto; or (ii) the Preliminary Approval Order is reversed, vacated, or modified in any material respect by any court with jurisdiction and authority.

9.1.3   If the *Court* declines to enter the *Final Order*, then this *Settlement Agreement* shall automatically terminate, and thereupon become null and void.

9.1.4   If the *Final Order* entered by the *Court* is reversed or modified in any material respect on appeal, and if within thirty-one (31) days after the date when such reversal or modification becomes *Final* the *Settling Parties* have not agreed in writing to proceed with all or part of the *Settlement Agreement* in light of such ruling, then this *Settlement Agreement* shall automatically terminate, and thereupon become null and void.

9.2     Consequences of Termination of the Settlement Agreement.  If the Settlement Agreement is terminated and rendered null and void for any reason specified in Section 9.1 above, the following shall occur:

9.2.1   *Class Counsel* and *Defendants'* counsel shall within thirty (30) days after the date of termination of the *Settlement* cause the return to *Defendants* of the amount contributed by them to the *Settlement Fund* (if such fund has been established), with all

- 28 -

net income earned thereon, reduced by any taxes paid (if any) pursuant to Section 6.3, and reduced by any costs incurred in the administration of the settlement or in connection with the *Class Notice* or other costs paid to the *Trustee*, *Recordkeepers* or *Escrow Agent* or paid to the *Independent Fiduciary*;

9.2.2 The *Action* shall for all purposes with respect to the *Settling Parties* revert to its status as of the day immediately before the *Agreement Execution Date*;

9.2.3 All *Releases* given under or pursuant to this *Settlement Agreement*, and all *Stipulated Dismissals*, shall be null and void; none of the terms of the *Settlement Agreement* shall be effective or enforceable, except Sections 6, 7.6, 7.7, 8.13, 8.14, 8.15, 9.2, and the definitions in Section 1 to the extent necessary to interpret the surviving sections. Neither the fact nor the terms of this *Settlement Agreement* shall be offered or received in evidence in the *Action* or in any other action or proceeding for any purpose, except in an action or proceeding arising under this *Settlement Agreement* or arising out of or relating to the *Final Order*.

## 10.   MISCELLANEOUS PROVISIONS

10.1   Governing Law.   This *Settlement Agreement* shall be governed by the laws of the State of Minnesota without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States governs any matter set forth herein.

10.2   Public Communications.   The parties and their counsel agree that, should the Company determine that a press release or communication to the public regarding the settlement of this matter is necessary or appropriate, the wording shall be jointly agreed

upon by counsel for the *Settling Parties*. Any dispute or controversy with respect to the rights or obligations of any *Settling Party* with respect to such public communications shall be submitted to the Hon. Daniel Weinstein (Ret.) for final and binding determination; in the event that Judge Weinstein is unavailable to resolve any such disputes, the dispute shall be resolved by any mutually agreeable retired judge who then serves as a mediator at JAMS.

10.3    Severability. The provisions of this *Settlement Agreement* are not severable.

10.4    Amendment. Before entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed by or on behalf of all *Settling Parties*. Following entry of the *Final Order*, the *Settlement Agreement* may be modified or amended only by written agreement signed on behalf of all *Settling Parties*, and approved by the *Court*.

10.5    Waiver. The provisions of this *Settlement Agreement* may be waived only by an instrument in writing executed by the waiving party. The waiver by any party of any breach of this *Settlement Agreement* shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this *Settlement Agreement*.

10.6    Construction. None of the *Settling Parties* hereto shall be considered to be the drafter of this *Settlement Agreement* or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

- 30 -

10.7 <u>Further Assurances</u>. Each of the *Settling Parties* agrees, without further consideration, and as part of finalizing the *Settlement* hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this *Settlement Agreement*.

10.8 <u>Survival</u>. All representations, warranties and covenants set forth in this *Settlement Agreement* shall be deemed continuing and shall survive the *Effective Date* and termination or expiration of this *Settlement Agreement*.

10.9 <u>Notices</u>. Any notice, demand or other communication under this *Settlement Agreement* (other than the *Class Notice* or other notices given at the direction of the *Court*) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

IF TO *NAMED PLAINTIFFS*:

> Thomas J. McKenna, Esq.
> Gainey & McKenna
> 295 Madison Avenue, 4th Floor
> New York, NY 10017
> Phone: (212) 983-1300
> E-mail: tjmckenna@gaineyandmckenna.com
> - and – tjmlaw2001@yahoo.com

IF TO *DEFENDANTS*:

> Stephen P. Lucke, Esq.
> Dorsey & Whitney LLP

50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Phone:        (612) 343-7947
E-mail:       lucke.steve@dorsey.com

10.10  Any *Settling Party* may change the address at which it is to receive notice by written notice delivered to the other *Settling Parties* in the manner described above.

10.11  Entire Agreement.  This *Settlement Agreement* contains the entire agreement among the *Settling Parties* relating to this *Settlement*.  It specifically supersedes any settlement terms or settlement agreements relating to *Defendants* that were previously agreed upon orally or in writing by any of the *Settling Parties*.

10.12  Counterparts.  This *Settlement Agreement* may be executed by exchange of faxed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this *Settlement Agreement* shall be deemed an original signature for purposes of this *Settlement Agreement*.  This *Settlement Agreement* may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

10.13  Binding Effect.  This *Settlement Agreement* binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors and successors.

10.14  Agreement Execution Date.  October 7, 2010 shall be the *Agreement Execution Date.*

IN WITNESS WHEREOF, the *Settling Parties* have executed this *Settlement Agreement* as of the 7th day of October, 2010.

- 32 -

GAINEY & McKENNA                    *Attorneys for Plaintiffs*

*Thomas J. M⁻Kenna*

Thomas J. McKenna, Esq.
295 Madison Avenue, 4th Floor
New York, NY  10017

DORSEY & WHITNEY LLP                *Attorneys for Defendants*

Stephen P. Lucke, Esq.
P. Matthew Ralph, Esq.
50 South Sixth Street, Suite 1500
Minneapolis, MN  55402


## EXHIBITS TO THE SETTLEMENT AGREEMENT

Exhibits

A.    [Proposed] Class Notice

B.    [Proposed] Order Preliminarily Approving Partial Settlement, Approving
      Form and Manner of Notice, and Scheduling Hearing on Fairness of
      Settlement Pursuant To Federal Rule Of Civil Procedure 23(E)

C.    [Proposed] Order of Final Judgment and Dismissal

D.    Plan of Allocation

E.    Escrow Agreement

F.    Summary Notice


- 33 -

# EXHIBIT A

**EXHIBIT A**

<u>UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA</u>

## NOTICE OF CLASS ACTION SETTLEMENT

| | |
|---|---|
| Delilah Morrison, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>MoneyGram International, Inc., et al.,<br>                    Defendants. | No. 08-CV-1121 |

## NOTICE OF CLASS ACTION SETTLEMENT

### YOUR LEGAL RIGHTS MIGHT BE AFFECTED IF YOU ARE A MEMBER OF THE FOLLOWING CLASS

All persons (other than Defendants or members of the MoneyGram International, Inc. Pension & 401(k) Committee (the "401(k) Committee") and their beneficiaries, alternate payees (including spouses) and successors-in-interest) who both (i) were participants in or beneficiaries of the MoneyGram International, Inc. 401(k) Plan ("Plan") at any time during the period starting on July 1, 2004, through October 7, 2010 and (ii) as part of their participation in the Plan, held Employer Stock within the Employer Stock Fund, as those terms are defined in the Plan; and as to each such Person, his, her, or its beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), and Successors-In-Interest.

### PLEASE READ THIS NOTICE CAREFULLY.
### A FEDERAL COURT AUTHORIZED THIS NOTICE.
### THIS IS NOT A SOLICITATION. YOU HAVE NOT BEEN SUED.

This Notice advises you of a proposed class action settlement (the "Settlement"). The Settlement will provide $4,500,000 in cash, less attorneys' fees and expenses, and less costs of notice and settlement administration to the Plan. The Settlement resolves a lawsuit under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq ("ERISA"). You should read the entire Notice carefully because your legal rights are affected whether you act or not.

The Honorable Patrick J. Schiltz of the United States District Court, District of Minnesota, has preliminarily approved the proposed Settlement. The Court has also scheduled a hearing on final approval of the Settlement and on the Plaintiffs' motions for (i) attorneys' fees, (ii) expenses and (iii) the Named Plaintiffs' Service Award. Judge Schiltz has scheduled the hearing for _____.

**PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE SETTLEMENT CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE**

QUESTIONS? CALL _____ TOLL FREE, OR VISIT _____.
**Do not call the Court or MoneyGram concerning the Settlement.**
**They cannot answer your questions.**

**SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED ON PAGE 7 OF THIS NOTICE.**

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT | |
|---|---|
| **YOU CAN DO NOTHING**<br><br>**NO ACTION IS NECESSARY TO RECEIVE PAYMENT** | Any portion of the Settlement you are entitled to receive will be calculated as part of the implementation of the Settlement. If you are a current Plan participant and are authorized to receive a payment, the payment will be deposited into your Plan account.<br><br>If you are a Settlement Class member and no longer participate in the Plan, a Plan account will be established for you and you will be notified of such account along with further instructions. |
| **YOU CAN OBJECT** | You can write to the Court about why you do not like the Settlement. |
| **YOU CAN GO TO A HEARING** | You can ask to speak in Court about the fairness of the Settlement. Instructions on informing the Court that you wish to speak at the hearing are described below. |

These rights and options – and the deadlines to exercise them – are explained in this Notice. The Court in charge of this case still has to decide whether to approve the Settlement. Payments to the Plan will be made only if the Court approves the Settlement and that approval is upheld in the event of any appeals. Further information regarding the litigation and this Notice may be obtained by contacting Plaintiffs' Lead Counsel ("Lead Counsel"):

Thomas J. McKenna, Esq.
Gainey & McKenna
295 Madison Avenue, 4th Floor
New York, New York 10017
Tel: 212-983-1300

## TABLE OF CONTENTS

BASIC INFORMATION..................................................................................................... 4

1. Why did I receive this notice package? ........................................................... 4
2. How do I obtain more information?.................................................................. 4
3. What is this lawsuit about? ............................................................................. 4
4. Why is this a class action?.............................................................................. 4
5. Why is there a Settlement? ............................................................................. 5
6. How do I know if I am part of the Settlement?................................................ 5
7. I am still not sure if I am included. ................................................................. 5
8. Can I exclude myself from the Settlement?..................................................... 5

THE SETTLEMENT BENEFITS – WHAT YOU RECEIVE ............................................. 5

9. What does the Settlement provide?................................................................. 5

QUESTIONS?  CALL _____ TOLL FREE, OR VISIT _____
**Do not call the Court or MoneyGram International, Inc. concerning the Settlement.
They cannot answer your questions.**

Page 2

10.  How much will my payment be? ......................................................................... 6

**HOW YOU OBTAIN A PAYMENT** ........................................................................... **6**

11.  How can I obtain my payment? ........................................................................... 6
12.  When will I receive my payment? ....................................................................... 6

**THE LAWYERS REPRESENTING YOU** ..................................................................... **6**

13.  Do I have a lawyer in this case? ......................................................................... 6
14.  How will the lawyers be paid? ............................................................................ 6

**OBJECTING TO THE SETTLEMENT** ......................................................................... **7**

15.  What does it mean to object? .............................................................................. 7
16.  How do I tell the Court that I do not like the Settlement? .................................. 7

**THE COURT'S FAIRNESS HEARING** ......................................................................... **7**

17.  When will the Court hold the Fairness Hearing? ................................................ 7
18.  Do I have to go to the Fairness Hearing? ........................................................... 8
19.  May I speak at the Fairness Hearing? ................................................................. 8
20.  What happens if I do nothing at all? ................................................................... 8

**ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?** ......................................... **8**

## BASIC INFORMATION

| 1. | Why did I receive this notice package? |
|---|---|

You or someone in your family may have been a participant in the Plan during the Class Period. The Court has directed the sending of this Notice because you have a right to know about a proposed Settlement of a class action lawsuit and about all of your options before the Court decides whether to approve the Settlement. If the Court approves the Settlement and after objections and appeals, if any, are resolved, payments will be made that the Settlement allows. This package explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to obtain them. The Court in charge of the case is the United States District Court for the District of Minnesota, and the case is known as *Morrison v. MoneyGram International, Inc.*, 08-CV-1121 (the "Action"). The people who sued are called Plaintiffs, and the company and the individuals that the Plaintiffs sued – MoneyGram International, Inc. and several of its officers, directors, and employees – are called Defendants.

| 2. How do I obtain more information? |
|---|

You may call the number listed on this notice and/or you may go to the website listed on this notice. You may also call Lead Counsel, Thomas J. McKenna, at 212-983-1300. Please do not contact the Court or MoneyGram International, Inc. concerning the Settlement. They will not be able to answer your questions.

**QUESTIONS?  CALL _____  TOLL FREE, OR VISIT _____**
**Do not call the Court or MoneyGram International, Inc. concerning the Settlement.**
**They cannot answer your questions.**

## 3. What is this lawsuit about?

A lawsuit entitled *Morrison v. Moneygram International, Inc.*, 08-cv-1121, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") was filed in April 2008 against MoneyGram International, Inc., the MoneyGram International, Inc. Pension and 401(k) Committee, and certain individual defendants. An amended complaint was filed in August 2008, which is the most recent operative pleading describing the claims brought in this action.

The Action alleges that Defendants breached their duties under ERISA by causing the Plan to purchase and hold shares of MoneyGram stock at a time when, according to the Plaintiffs, the stock was an unsuitable and imprudent investment for the Plan. Plaintiffs further allege that Defendants violated ERISA by providing inaccurate and incomplete information to Plan participants and Plan fiduciaries. The Defendants were also alleged to have failed to address conflicts of interest between their personal and corporate interests and their fiduciary responsibilities to the Plan. Plaintiffs sought to recover from the Defendants losses to the Plan, and indirectly, to the Plan's participants and beneficiaries caused by Defendants' alleged conduct.

Defendants deny any wrongdoing, fault, liability or damage to the Plaintiffs or the Settlement Class (as defined below). Defendants deny that they committed any violation of ERISA or other law, deny that they acted improperly in any way, believe that they acted properly and in accordance with ERISA at all times, and believe that the Action is without merit. Defendants also maintain substantive defenses to the claims in the Action, including but not limited to the following: (i) Defendants complied with ERISA at all times; (ii) the Plan's investment in MoneyGram stock was prudent at all times, and ERISA's protections for employers who offer employees the opportunity to invest in company stock bar this lawsuit; (iii) the governing documents of the Plan required MoneyGram stock to be offered as an investment option and utilized as a vehicle for Company matching contributions; (iv) Defendants made appropriate disclosures regarding MoneyGram's financial condition, and no fiduciary communication was misleading; and (v) ERISA specifically allows for the Company and its board, executive officers or employees to serve as fiduciaries of the Plan, rendering a conflict of interest claim unmeritorious. Despite these potential defenses, in view of the uncertainty and risk of the outcome of any litigation, and the disruption and substantial expenses and length of time necessary to defend the proceeding, through the conclusion of discovery, summary judgment motions, a possible trial, possible post-trial proceedings and possible appeals, the Parties wish to settle the Action and put the Settled Claims to rest, finally and forever, without in any way acknowledging any wrongdoing, fault, liability or damage to the Named Plaintiffs (Delilah Morrison and Sherri Arguello) or the Settlement Class (as defined below). This Stipulation and the terms hereof shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Defendant with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have asserted.

## 4. Why is this a class action?

In a class action, one or more persons called Class Representatives sue on behalf of people who have similar claims. All of these people who have similar claims collectively make up the Class and are referred to individually as Class members. One court resolves the issues for all Class members. Because the conduct alleged by Plaintiffs in this case allegedly affected a large group of people in a similar way, Plaintiffs filed this case as a class action.

QUESTIONS? CALL _____ TOLL FREE, OR VISIT _____
**Do not call the Court or MoneyGram International, Inc. concerning the Settlement.**
**They cannot answer your questions.**

## 5. Why is there a Settlement?

The Court has not decided in favor of Plaintiffs or Defendants. Instead, both sides agreed to a Settlement. By agreeing to a Settlement, parties avoid the costs and risks of a trial, and the Class will receive compensation. The Class Representatives and their attorneys believe that the Settlement is best for all Class Members. The Settlement also has been approved and determined to be fair by an Independent Fiduciary who has reviewed its terms.

## 6. How do I know if I am part of the Settlement?

The Court has conditionally certified this case as a class action, in which every person who fits the following description is a Class member:

All persons (other than Defendants or members of the MoneyGram International, Inc. Pension & 401(k) Committee (the "401(k) Committee") and their beneficiaries, alternate payees (including spouses) and successors-in-interest) who both (i) were participants in or beneficiaries of the MoneyGram International, Inc. 401(k) Plan ("Plan") at any time during the period starting on July 1, 2004, through October 7, 2010 and (ii) as part of their participation in the Plan, held Employer Stock within the Employer Stock Fund, as those terms are defined in the Plan; and as to each such Person, his, her, or its beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), and Successors-In-Interest.

## 7. I am still not sure if I am included.

If you are still not sure whether you are included, please call _____ or visit _____.

## 8. Can I exclude myself from the Settlement?

**You do not have the right to exclude yourself from the Settlement in this case.** The case was certified under Fed. R. Civ. P. 23(b)(1) and/or (b)(2) as a "non opt-out" class action because of the way ERISA operates -- breach of fiduciary duty claims must be brought by participants on behalf of the Plan, and any judgment or resolution necessarily applies to all participants and beneficiaries of the Plan. As such, it is not possible for any participants or beneficiaries to exclude themselves from the benefits of the Settlement. **Therefore, you will be bound by any judgments or orders that are entered in this Action for all claims that were asserted in this case on your behalf or on behalf of the Plan or otherwise included in the release provided for by the Settlement. Although you cannot opt out of the Settlement, you can object to the Settlement and ask the Court not to approve the Settlement. See question 16 for more information.**

## THE SETTLEMENT BENEFITS – WHAT YOU RECEIVE

## 9. What does the Settlement provide?

Without admitting any wrongdoing, Defendants have agreed to pay $4,500,000 million in cash to resolve Plaintiffs' claims against them. The cash payment is called the Settlement Fund. Certain fees and expenses, including those incurred by Class Counsel, and the Named Plaintiffs' Service Award (not more

**QUESTIONS?  CALL _____ TOLL FREE, OR VISIT _____
Do not call the Court or MoneyGram International, Inc. concerning the Settlement.
They cannot answer your questions.**

than $10,000.00 for each Named Plaintiff) and settlement administration, as approved by the Court, will be deducted from the Settlement Fund. The remaining amount is called the Net Settlement Fund.

---

### 10. How much will my payment be?

The Net Settlement Fund will be allocated among all Class Members, of which there are approximately 3200, pursuant to a Plan of Allocation to be approved by the Court. Once the Plan of Allocation is approved, it will be available for review on the website listed on this Notice. If you have questions regarding the Settlement or the settlement amount you may receive, please contact Lead Counsel listed on Page 2 of this Notice. Please do not contact the Company or the Court. They cannot answer your questions.

## HOW YOU OBTAIN A PAYMENT

---

### 11. How can I obtain my payment?

You do not need to file a claim for recovery in this action.

If you are a Settlement Class member and a current Plan participant and are authorized to receive a payment, your Settlement proceeds will be deposited in your Plan account. If you are a Class Member and no longer participate in the Plan, a Plan account will be established for you and you will be notified of such account along with further instructions.

---

### 12. When will I receive my payment?

The Court will hold a hearing on _____, to decide whether to approve the Settlement. If the Court approves the Settlement, appeals may follow. It is always uncertain when these appeals can be resolved, and resolving them can take time, perhaps more than a year. Please be patient.

## THE LAWYERS REPRESENTING YOU

---

### 13. Do I have a lawyer in this case?

The law firm of Gainey & McKenna is Lead Counsel and, together with its local counsel, Perry & Perry, PLLP, represents you and other Class Members. These lawyers are called Class Counsel. You will not be charged for these lawyers. These lawyers will be paid from the Settlement. If you want to be represented by your own lawyer, you may hire one at your own expense.

---

### 14. How will the lawyers be paid?

Class Counsel will ask the Court for attorney fees of up to one third (33 1/3%) of the Settlement Fund, plus out-of-pocket expenses they incurred to prosecute the litigation on behalf of the proposed Class in an amount not to exceed $150,000. The Court may award less than these amounts.

**QUESTIONS? CALL _____ TOLL FREE, OR VISIT _____**
**Do not call the Court or MoneyGram International, Inc. concerning the Settlement.**
**They cannot answer your questions.**

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some portion of it.

| 15.  What does it mean to object? |
|---|

Objecting is simply telling the Court that you do not like something about the Settlement or the request for attorneys' fees and reimbursement of expenses.  Filing an objection will not adversely affect your right to participate in the Settlement proceeds.

| 16.  How do I tell the Court that I do not like the Settlement? |
|---|

You can object to the Settlement if you dislike any part of it.  You can give reasons why you think the Court should not approve it.  The Court will consider your views.  To object, you must send a written letter saying that you object to the Settlement in *Morrison v. MoneyGram International, Inc.*, 08-CV-1121.  Be sure to include your name, address, telephone number, and your signature. More importantly, you must include in your written objection (a) a notice of whether you intend to appear, (b) a statement of membership in the Settlement Class, and (c) the specific grounds for the objections and any reason why the Settlement Class Member desires to appear and be heard.  **Mail the objection to <u>each</u> of the addresses below postmarked no later than _____.  You must mail your objection by this date. If you fail to do so, the Court may not consider your objection and you may waive your right to speak at the Fairness Hearing described in the next paragraph.  <u>All papers submitted must include the Case Number 08-CV-1121.</u>**

| COURT | LEAD COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>District of Minnesota<br>Suite 202<br>300 South Fourth Street<br>Minneapolis, MN 55415 | Thomas J. McKenna, Esq.<br>Gainey & McKenna<br>295 Madison Avenue, 4th Floor<br>New York, New York  10017 | Stephen P. Lucke<br>Dorsey & Whitney, LLP<br>50 South Sixth Street,<br>Suite 1500<br>Minneapolis, MN  55402 |

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement.  You may attend and you may ask to speak, but you are not required to do so.

| 17.  When will the Court hold the Fairness Hearing? |
|---|

The Court will hold a Fairness Hearing at _____, at the United States District Court for the District of Minnesota, United States District Courthouse, Courtroom 7B, 300 South Fourth Street, Minneapolis, MN  55415.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court will listen to people who have submitted objections and asked to speak at the hearing.  The Court will also decide what amount of Class Counsel fees and expenses will be paid from the Settlement Fund, and what amounts, if any, should be

**QUESTIONS?  CALL _____ TOLL FREE, OR VISIT _____**
**Do not call the Court or MoneyGram International, Inc. concerning the Settlement.**
**They cannot answer your questions.**

paid to the Named Plaintiffs. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

---

### 18. Do I have to go to the Fairness Hearing?

---

No, Class Counsel will answer questions the Court may have. You are, however, welcome to go at your own expense. If you send an objection, you do not have to go to Court to talk about it. As long as your objection is postmarked by _____, the Court will consider it. You also may pay your own lawyer to attend, but it is not necessary.

---

### 19. May I speak at the Fairness Hearing?

---

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that you wish to be heard orally with respect to the approval of the Settlement, the amounts you may be entitled to receive (see question 10 above), the request for attorneys' fees and expenses, or the request for amounts to be paid to the Named Plaintiffs. Your letter must bear the caption "Notice of Intention to Appear in *Morrison v. MoneyGram International, Inc.,* 08-CV-1121." Be sure to include your name, address, telephone number, and your signature. Your letter must be postmarked no later than _____, and sent to the Clerk of the Court, Lead Counsel, and Defense Counsel, at the addresses indicated above in question 16.

---

### 20. What happens if I do nothing at all?

---

The Settlement does not require you to do anything, and there is no penalty for doing nothing at all. If you are entitled to a Settlement payment, you will automatically receive a payment as discussed in question 11.

### ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

This notice summarized the proposed Settlement. More details are in the parties' Class Action Settlement Agreement (the "Settlement Agreement"). You can obtain a copy of the Settlement Agreement by visiting _____. **Remember, please do not contact the Court or MoneyGram International, Inc. about the Settlement. They cannot give you additional information.**

DATE: _____

QUESTIONS?  CALL _____ TOLL FREE, OR VISIT _____
**Do not call the Court or MoneyGram International, Inc. concerning the Settlement.
They cannot answer your questions.**

Page 8

# EXHIBIT B

**EXHIBIT B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DELILAH MORRISON and SHERRI ARGUELLO, On Behalf of Themselves And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MONEYGRAM INTERNATIONAL, INC., PHILIP W. MILNE, JESS T. HAY, LINDA JOHNSON RICE, ALBERT M. TEPLIN, TIMOTHY R. WALLACE, MONTE E. FORD, JUDITH K. HOFER, ROBERT C. KRUEGER, DONALD E. KIERNAN, DOUGLAS L. ROCK, OTHÓN RUIZ MONTEMAYOR, DAVID J. PARRIN, ANTHONY P. RYAN, THE MONEYGRAM INTERNATIONAL, INC. PENSION AND 401(k) COMMITTEE, and JOHN DOES 1-20,<br><br>Defendants. | Civil Action: 08-cv-01121-PJS-JJG |

## ORDER PRELIMINARILY APPROVING SETTLEMENT, CONDITIONALLY CERTIFYING CLASS FOR PURPOSES OF SETTLEMENT, APPROVING FORM AND MANNER OF NOTICE, AND SCHEDULING HEARING ON FAIRNESS OF SETTLEMENT PURSUANT TO FED. R. CIV. P. 23(e)

WHEREAS, this matter having come before the Court for an Order: (1) preliminarily approving the Settlement of *Delilah Morrison v. MoneyGram International, Inc.,* 08-CV-1121 (the "Action"), pursuant to the terms and conditions of the Settlement Agreement in this Action ("Settlement Agreement"); (2) approving the form of Class Notice and the mailing of Class Notice; (3) conditionally certifying the Settlement Class under Fed. R. Civ. 23(a) and (b)(1) and/or (b)(2) for purposes of the Settlement, and the final approval thereof; (4) scheduling a hearing to consider the fairness of the Settlement pursuant to Fed. R. Civ. P. 23(e), to consider

- 1 -

the application for Attorneys' Fees and Expenses by Plaintiffs' Counsel, and to consider the

application of the Named Plaintiffs for a Named Plaintiffs' Service Award, this Court having

conducted a preliminary review of the Settlement Agreement, and the pleadings and records on

file, and good cause appearing, it is hereby ORDERED as follows:

1.      To the extent not otherwise defined herein, all capitalized terms shall have the

same meaning as used in the Settlement Agreement.

2.      The Court has jurisdiction over the subject matter of the Action and over all

parties to it, including all members of the Settlement Class and Defendants.

3.      Pursuant to Fed. R. Civ. P. 23(b)(1) and/or (b)(2) and for the purposes of the

settlement only, the Action is hereby conditionally certified as a class action on behalf of:

> All persons (other than Defendants or members of the MoneyGram
> International, Inc. Pension & 401(k) Committee (the "401(k)
> Committee") and their beneficiaries, alternate payees (including
> spouses) and successors-in-interest) who both (i) were participants
> in or beneficiaries of the Plan at any time during the period starting
> on July 1, 2004, through October 7, 2010 and (ii) as part of their
> participation in the Plan, held Employer Stock within the Employer
> Stock Fund, as those terms are defined in the Plan; and as to each
> such Person, his, her, or its beneficiaries, alternate payees
> (including spouses of deceased Persons who were Plan
> participants), and Successors-In-Interest.

4.      Solely for the purposes of this settlement, the Court finds that the prerequisites for

a class action under Fed. R. Civ. P. 23(a) and (b)(1) and/or (b)(2) have been satisfied in that: (a)

the number of Settlement Class members is so numerous that joinder of all members thereof is

impracticable; (b) there are questions of law and fact common to the members of the Settlement

Class; (c) the claims of the Class Representatives (defined below) are typical of the claims of the

members of the Settlement Class they seek to represent; (d) the Class Representatives will fairly

and adequately represent the interests of the Settlement Class; (e) the prosecution of separate

actions by or against individual members of the class would create a risk of (1) inconsistent or

- 2 -

varying adjudications with respect to individual members of the class which would establish

incompatible standards of conduct for the party opposing the class, or (2) adjudications with

respect to individual members of the class which would as a practical matter be dispositive of the

interest of the other members not parties to the adjudications or substantially impair or impede

their ability to protect their interests; and (f) the party opposing the class has acted or refused to

act on grounds generally applicable to the class, thereby making appropriate final injunctive

relief or corresponding declaratory relief with respect to the class as a whole.

      5.      Pursuant to Fed. R. Civ. P. 23, the Court appoints Delilah Morrison and Sherri

Arguello as Class Representatives for settlement purposes only. The Court appoints Gainey &

McKenna as Lead Counsel and Perry & Perry, PLLP as Liaison Counsel, collectively Class

Counsel, for the class. Notice of this Order granting Preliminary Class Certification shall be

provided to all members of the Settlement Class, as detailed below.

      6.      The Settlement documented in the Settlement Agreement is hereby

PRELIMINARILY APPROVED as appearing to be fair, reasonable, and adequate; to have been

the product of informed and extensive arms' length negotiations among the parties; and to reflect

the hard-fought compromise between the parties; and to be in the best interest of the class

members.

      7.      The Court finds that the form of the Class Notice attached to this Order as Exhibit

A is APPROVED. In a form substantially similar to Exhibit A, such Class Notice shall be

mailed by first class mail, postage prepaid to the last known address of all Settlement Class

members at least 45 days prior to the Fairness Hearing. Lead Counsel shall cause to be filed an

affidavit, at or before the Fairness Hearing (described below), attesting to the mailing of the

Class Notice with the Court. Within three (3) calendar days after receiving preliminary approval

- 3 -

of the Settlement Agreement, the Company shall request the Recordkeepers to provide directly to Lead Counsel or Lead Counsel's designee a list (in electronic form) containing the names and current or last known addresses of all persons believed to be Settlement Class members.

8.      Within fourteen (14) calendar days of receiving preliminary approval of the Settlement Agreement, Lead Counsel shall also cause or ensure that the Claims Administrator causes (i) Summary Notice of the Settlement substantially in the form attached as Exhibit F to the Settlement Agreement to be published in Investors Business Daily; and (ii) a settlement website to be set up and made live that includes, among other things: a copy of the Settlement Agreement; Frequently Asked Questions and the answers to those questions; and contact information, including a toll-free number where Settlement Class members can obtain additional information.

9.      The form and manner of delivery and publication of the notices directed hereby and in the Settlement Agreement meet the requirements of Fed. R. Civ. P. 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all members of the Settlement Class.

10.     The Plan of Allocation is preliminarily approved as a fair and equitable basis upon which to allocate the proceeds of the Settlement Fund among the Settlement Class members. A full and fair opportunity will be accorded to all Settlement Class members to be heard with respect to the Plan of Allocation at the Fairness Hearing, after which the Court will issue its final approval of the Plan of Allocation.

11.     A.B. Data, Ltd. is hereby appointed the Claims Administrator to supervise and administer, in conjunction with the Parties, the notice process and aid in the distribution of the Settlement Fund.

- 4 -

12.    A hearing (the "Fairness Hearing") pursuant to Fed. R. Civ. P. 23(e) is hereby

SCHEDULED to be held before the Court on _____ in the United States District

Court for the District of Minnesota, United States District Courthouse, Courtroom 7B, 300 South

Fourth Street, Minneapolis, MN 55415 for the following purposes:

(i)    to determine finally whether the Action satisfies the applicable

prerequisites for class action treatment under Fed. R. Civ. P. 23(a) and (b)(1) and/or

(b)(2) for settlement purposes only;

(ii)    to determine whether the proposed Settlement is fair, reasonable, and

adequate, and should be approved by the Court;

(iii)    to determine whether the Plan of Allocation should be approved by the

Court;

(iv)    to determine whether a judgment should be entered dismissing the Action

with prejudice;

(v)    to consider whether Class Counsel's application for an award of attorneys'

fees and expenses is fair and reasonable and should be approved by the Court;

(vi)    to consider whether the Named Plaintiffs' Service Award should be paid;

(vii)    to rule upon such other matters as the Settlement Agreement contemplates,

and as the Court may deem appropriate.

13.    Any of the Parties' papers with respect to whether the Settlement should be

approved, and any application by Class Counsel for payment of attorneys' fees and

reimbursement of out-of-pocket expenses incurred to prosecute the case and payment of the

Named Plaintiffs' Service Award, together with papers in support thereof, shall be filed with the

Court and served on all other parties to the Settlement Agreement on or before fourteen days

- 5 -

before the Fairness Hearing. Copies of such materials shall be available for inspection at the Office of the Clerk of the Court, United States District Court for the District of Minnesota, 300 South Fourth Street, 202 U.S. Courthouse, Minneapolis, MN 55415.

14.     The Court having determined preliminarily that this action may proceed as a non-opt out class action under Fed. R. Civ. P. 23(a) and (b)(l) and/or (b)(2), Settlement Class members shall be bound by any judgment in this Action, whether favorable or unfavorable, subject to the Court's final determination at the Fairness Hearing as to whether this Action may so proceed.

15.     Any Settlement Class member who objects to the settlement or any aspect thereof, or to Class Counsel's request for an award of attorney's fees and expenses, may appear in person or through counsel, at his or her own expense, at the Fairness Hearing to present any evidence or argument that may be proper and relevant.

16.     At the Fairness Hearing, the Court shall consider comments or objections to the certification of the Settlement Class under Fed. R. Civ. P. 23(a) and (b)(l) and/or (b)(2), the Settlement, the award of attorneys' fees and expenses, the Plan of Allocation, and the Named Plaintiffs' Service Award. However, no Settlement Class member shall be heard and no papers, briefs, pleadings, or other documents submitted by any Settlement Class member shall be received and considered by the Court unless, no later than seven days prior to the Fairness Hearing, or such other date set by the court, the Settlement Class member files with the Court and mails to Class Counsel and Defendants' counsel (at the addresses specified below), written objections that include (a) a notice of intention to appear, (b) a statement of membership in the Settlement Class, and (c) the specific grounds for the objections and any reasons why the Settlement Class member desired the Court to consider.

- 6 -

IF TO *NAMED PLAINTIFFS*:

>    Thomas J. McKenna, Esq.
>    Gainey & McKenna
>    295 Madison Avenue, 4th Floor
>    New York, NY   10017

IF TO *DEFENDANTS*:

>    Stephen P. Lucke, Esq.
>    Dorsey & Whitney LLP
>    50 South Sixth Street, Suite 1500
>    Minneapolis, MN 55402-1498

17.    Attendance at the Fairness Hearing is not necessary.  However, persons wishing to be heard orally in opposition to the approval of the Settlement, the requests for attorneys' fees and expenses, or the request for the Named Plaintiffs' Service Award, shall state their intention to appear at the Fairness Hearing in their written objection(s).  Such persons must identify in their written objections the names of any witness they may call to testify, and any exhibits they intend to introduce into the evidence at the Fairness Hearing.  Settlement Class members do not need to appear at the hearing or take any other action to indicate their approval.

18.    Any Settlement Class member who fails to object in the manner prescribed herein shall be deemed to have waived his or her objections and forever be barred from making any such objections in the Action or in any other action or proceeding.

19.    Pending final determination of whether the Settlement should be approved, the Named Plaintiffs, all members of the Settlement Class and the Plan, and/or anyone who acts or purports to act on their behalf, are hereby enjoined and shall not institute, commence or prosecute any action, which asserts Released Claims against any Releasee.

20.     The Court reserves the right to approve the Settlement with such modifications as may be agreed to by counsel for the Parties and without further notice to members of the Settlement Class.

21.     In the event the Settlement is not approved by the Court, or such approval does not become final and the Effective Date does not occur as provided in the Settlement Agreement, the Settlement and this Order shall become null and void and of no further force and effect; and neither shall be used nor referred to for any purpose whatsoever in this or any other proceeding. In such event, the Settlement Agreement and this Order and all negotiations and proceedings relating thereto shall be withdrawn without prejudice as to the rights of any and all parties thereto, who shall be restored to their respective positions prior to the Settlement.

22.     The Court hereby retains jurisdiction for purposes of implementing the Settlement Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Settlement as may from time to time be appropriate and resolve any and all disputes arising thereunder.

23.     All funds held in the Escrow Account as described in paragraph 7.2 of the Settlement Agreement shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court.

24.     The Court acknowledges that Evercore Trust Company is authorized to act on behalf of the Plan in connection with the terms of PTE 2003-39.

**SO ORDERED** this ___ day of _____, 2010

_____
HON. PATRICK J. SCHILTZ
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

# EXHIBIT C

## EXHIBIT C

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DELILAH MORRISON and SHERRI ARGUELLO, On Behalf of Themselves And All Others Similarly Situated, | **Civil Action: 08-cv-01121-PJS-JJG** |

                           Plaintiffs,

      vs.

MONEYGRAM INTERNATIONAL, INC., PHILIP W. MILNE, JESS T. HAY, LINDA JOHNSON RICE, ALBERT M. TEPLIN, TIMOTHY R. WALLACE, MONTE E. FORD, JUDITH K. HOFER, ROBERT C. KRUEGER, DONALD E. KJERNAN, DOUGLAS L. ROCK, OTHON RUIZ MONTEMAYOR, DAVID J. PARRIN, ANTHONY P. RYAN, THE MONEYGRAM INTERNATIONAL, INC. PENSION AND 401(k) COMMITTEE, and JOHN DOES 1-20,

                        Defendants.

### ORDER AND FINAL JUDGMENT

This action came on for a final hearing on a proposed settlement (the "Settlement") of the action entitled *Morrison v. MoneyGram International, Inc.*, 08-CV-1121 (the "Action") and the issues having been duly heard and a decision having been duly rendered,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.     To the extent not otherwise defined herein, all terms shall have the same meaning as used in the Settlement Agreement in this Action (the "Settlement Agreement").

- 1 -

2.      The Court has jurisdiction over the subject matter of the Action and over all parties to it, including all members of the Settlement Class.

3.      Pursuant to Fed. R. Civ. P. 23(e), the Court hereby approves and confirms the Settlement embodied in the Settlement Agreement as being a fair, reasonable, and adequate settlement and compromise of the Action and in the best interests of the Settlement Class. It adopts the Settlement Agreement as its judgment, and orders that the Settlement Agreement shall be consummated and implemented in accordance with its terms and conditions.

4.      The Court determines that the Settlement Agreement has been negotiated vigorously and at arm's-length by Plaintiffs and their counsel on behalf of the Plan and the Settlement Class and further finds that, at all times, Named Plaintiffs have acted independently and that their interests are identical to the interests of the Plan and the Settlement Class. If settlement of Named Plaintiffs' claims had not been achieved, both Named Plaintiffs and Defendants faced the expense, risk, and uncertainty of extended litigation. The Court further finds that the settlement complies with the terms of the Department of Labor's Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation PTE 2003-39, and is supported by a determination from an independent fiduciary that the settlement is appropriate for the Plan. Accordingly, the Court determines that the negotiation and consummation of the Settlement by the Plaintiffs on behalf of the Plan and the Settlement Class do not constitute "prohibited transactions" as defined in ERISA §§ 406(a) or (b).

- 2 -

5.    The Court determines that the Class Notice transmitted to the Settlement

Class and the published Summary Notice provided pursuant to the Preliminary Approval

Order concerning the Settlement and the other matters set forth therein, are the best

notice practicable under the circumstances and, in the form of the Class Notice, included

individual notice to all members of the Settlement Class who could be identified through

reasonable efforts.  Such Notices provided valid, due, and sufficient notice of these

proceedings and of the matters set forth therein, including the Settlement described in the

Settlement Agreement and the Plan of Allocation, to all persons entitled to such notice,

and such Notices have fully satisfied the requirements of Fed. R. Civ. P. 23 and the

requirements of due process.

6.    The Court hereby finds that the Plan of Allocation provides a fair and

equitable basis upon which to allocate the proceeds of the Settlement Fund among the

Settlement Class members.  A full and fair opportunity was accorded to all Settlement

Class members to be heard with respect to the Plan of Allocation.  Accordingly, the Court

hereby approves the Plan of Allocation.

7.    The Court hereby approves the maintenance of the Action as a class action

for settlement purposes only pursuant to Fed. R. Civ. P. Rule 23(a) and 23(b)(1) and/or,

(b)(2), with the class being defined as follows:

> All persons (other than Defendants or members of the
> MoneyGram International, Inc. Pension & 401(k) Committee
> (the "401(k) Committee") and their beneficiaries, alternate
> payees (including spouses) and successors-in-interest) who
> both (i) were participants in or beneficiaries of the *Plan* at any
> time during the period starting on July 1, 2004, through
> October 7, 2010 and (ii) as part of their participation in the

- 3 -

> *Plan*, held Employer Stock within the Employer Stock Fund, as those terms are defined in the *Plan*; and as to each such *Person*, his, her, or its beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), and *Successors-In-Interest*.

8.      The Court appoints Delilah Morrison and Sherri Arguello as Class Representatives for settlement purposes only. The Court appoints Gainey & McKenna as Lead Counsel, Perry & Perry LLP as Liaison Counsel, and the two together as Class Counsel for the Settlement Class. The Court has considered each of the elements required by Fed. R. Civ. P. 23(g) in order to ensure that Class Counsel will fairly and adequately represent the interests of the Settlement Class. Class Counsel who seek to represent the Settlement Class in the Action have done sufficient work to represent the interests of the Settlement Class.

9.      The Action is hereby dismissed with prejudice, each party to bear its own costs, except as provided herein.

10.     Effective upon the entry of this Order, the Plan, by and through the Independent Fiduciary retained pursuant to Section 3.2.3 of the Settlement Agreement, and by operation of this Order, both on the Plan's own behalf and on behalf of all Plan participants who are members of the Settlement Class, has absolutely and unconditionally released and forever discharged each and all of the Releasees from Released Claims that the Plan directly, indirectly, derivatively, or in any other capacity every had, now has, or hereafter may have.

11.     Effective upon the entry of this Order, Named Plaintiffs, on behalf of themselves and on behalf of the Settlement Class, have absolutely and unconditionally

- 4 -

released and forever discharged the Releasees from Released Claims that Named

Plaintiffs or the Settlement Class directly, indirectly, derivatively, or in any other

capacity ever had, now have, or hereafter may have. Nothing herein, however, shall

preclude any action or claim related to the implementation and/or enforcement of the

Settlement Agreement.

12.   Effective upon the entry of this Order, Defendants have absolutely and

unconditionally released and forever discharged the Named Plaintiffs, the Settlement

Class and Class Counsel from any and all Claims relating to the institution or prosecution

of the Action or the settlement of any Released Claims, except that the release shall not

include claims relating to the covenants or obligations set forth in the Settlement

Agreement. The Settling Parties intend the Settlement to be a final and complete

resolution of all disputes asserted or which could have been asserted by Named Plaintiffs,

the Settlement Class, the Plan, and Class Counsel against the Releasees with respect to

the Released Claims. Accordingly, Named Plaintiffs and Defendants shall not assert in

any forum that the claims asserted in the Action were brought or defended in bad faith or

without a reasonable basis. The Settling Parties shall not assert any contention regarding

a violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution,

defense or settlement of the Action. Except as expressly set forth in the Settlement

Agreement, each party shall bear his, her or its own costs and expenses, including

attorney's fees.

13.   In the event that the Settlement does not become effective in accordance

with the terms of the Settlement Agreement, the Final Order shall be rendered null and

- 5 -

void and shall be vacated *nunc pro tunc*, and the Action shall proceed in the manner provided in the Settlement Agreement and the Order of Preliminary Approval.

14.   Effective upon the entry of this Order, Plaintiffs, the Plan, and all Settlement Class members are permanently enjoined and barred from commencing or prosecuting any action asserting any of the Released Claims against any of the Releasees, either directly, representatively, derivatively, or in any other capacity, whether by a complaint, counterclaim, defense, or otherwise, in any local, state, or federal court, or in any agency or other authority, tribunal, or forum wherever located.

15.   The Settlement Agreement and this Final Order, whether or not consummated, do not and shall not be construed, argued, or deemed in any way to be (a) an admission or concession by Defendants with respect to any of the Released Claims or evidence of any violation of any statute or law or other wrongdoing, fault, or liability by Defendants, or (b) an admission or concession by Named Plaintiffs or any member of the Settlement Class that their claims lack merit or that the defenses that have been or may have been asserted by Defendants have merit.

16.   The Settlement Agreement and the Final Order shall not be offered or received in evidence by any class member or party to this action in any civil or administrative action or proceeding other than proceedings necessary to approve or enforce the terms of the Settlement Agreement and this Order and Final Judgment.

17.   The attorney fees sought by Class Counsel in the amount of _____ percent (___%) of the common fund established in this Action are reasonable in light of the successful results achieved by Class Counsel, the monetary benefits obtained in this

- 6 -

Action, the substantial risks associated with the Action, Class Counsel's skill and experience in class action litigation of this type, and the fee awards in comparable cases. Accordingly, Class Counsel is awarded attorney's fees in the amount of _____ percent (___%) of the common fund, specifically $_____.

18.    The litigation expenses incurred by Class Counsel in the course of prosecuting this action are reasonable. Accordingly Class Counsel is awarded expenses in the amount of $_____, to be paid from the Settlement Fund.

19.    Plaintiff Delilah Morrison is awarded $_____ as a Named Plaintiff Service Award and Plaintiff Sherri Arguello is awarded $_____ as a Named Plaintiff Service Award, as defined in the Settlement Agreement, in recognition of their contributions to this Action.

20.    Without affecting the finality of this Judgment, the Court retains jurisdiction for purposes of implementing the Settlement Agreement and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Settlement Agreement and the Settlement, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder.

**SO ORDERED** this _____ day of_____, 2010.


HON. PATRICK J. SCHILTZ
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA


- 7 -

001502-11  324700 V1

# EXHIBIT D

## EXHIBIT D

| | |
|---|---|
| DELILAH MORRISON and SHERRI ARGUELLO, On Behalf of Themselves And All Others Similarly Situated, | Civil Action: 08-cv-01121-PJS-JJG |
| | |
| Plaintiffs, | |
| | |
| vs. | |
| | |
| MONEYGRAM INTERNATIONAL, INC., PHILIP W. MILNE, JESS T. HAY, LINDA JOHNSON RICE, ALBERT M. TEPLIN, TIMOTHY R. WALLACE, MONTE E. FORD, JUDITH K. HOFER, ROBERT C. KRUEGER, DONALD E. KIERNAN, DOUGLAS L. ROCK, OTHÓN RUIZ MONTEMAYOR, DAVID J. PARRIN, ANTHONY P. RYAN, THE MONEYGRAM INTERNATIONAL, INC. PENSION AND 401(k) COMMITTEE, and JOHN DOES 1-20, | |
| | |
| Defendants. | |

## PLAN OF ALLOCATION

**I.     Definitions**

A.     Except as indicated in this Plan of Allocation, the capitalized terms used herein shall have the meanings ascribed to them in the Class Action Settlement Agreement ("Settlement Agreement").

B.     "Claims Administrator" means any third party vendor reasonably agreed upon by the Parties.

C.     "Employer Stock Fund" means the MoneyGram Employer Stock Fund, which was one of the investment funds in the MoneyGram International, Inc. 401(k) Plan during the Class Period.

D.      "Net Settlement Fund" shall have the meaning set forth in section 8.6 of the Settlement Agreement, and such other deductions and payments from the Settlement Fund as the Court may allow.

E.      The "Plan" means the MoneyGram International, Inc. 401(k) Plan.

F.      "Settlement Administrative Costs" means the taxes, fees and expenses that the Court approves for payment from, or are otherwise permitted to be paid from, the Settlement Fund pursuant to the Settlement Agreement.

G.      "Settlement Class Member" means a member of the Settlement Class.

H.      "Class Period" means the period from July 1, 2004 through the Agreement Execution Date, as defined in the Settlement Agreement.

**II.    Notice**

Pursuant to and in compliance with Rule 23 of the Federal Rules of Civil Procedure, this Court hereby finds and concludes that due and adequate notice was directed to all Persons who are Settlement Class Members who could be identified with reasonable effort, advising them of the Plan of Allocation and of their right to object thereto, and that a full and fair opportunity was accorded to all of the Settlement Class Members to be heard with respect to the Plan of Allocation.

**III.   Calculation of Allocation**

A.      Prior to disbursement of the Net Settlement Fund by the Escrow Agent to the Plan, the Company shall direct the Recordkeepers to provide to the Claims Administrator the data necessary to determine the amount to be distributed to each Settlement Class Member in accordance with this Plan of Allocation.

B.     For each Settlement Class Member, the Claims Administrator shall determine the approximate net loss ("Net Loss") as follows: Net Loss = A + B - C - D, where, for each Settlement Class Member's account:

1.     A = the dollar value, if any, of the balance invested in the Employer Stock Fund on the first day of the Class Period;

2.     B = the dollar value, if any, of all purchases of shares of the Employer Stock Fund during the Class Period as of the time of purchase(s);

3.     C = the dollar value, if any, of all sales of shares of the Employer Stock Fund during the Class Period as of the time of the sale(s); and

4.     D = the dollar value, if any, of the balance invested in the Employer Stock Fund on the last day of the Class Period.

C.     The Net Losses of the Settlement Class Members as calculated in Section III.B above will be totaled to yield the loss of the Plan as a whole over the Class Period (the "Plan's Loss").

D.     The Claims Administrator shall calculate for each Settlement Class Member his or her "Preliminary Fractional Share" of the Plan's Loss by dividing each Settlement Class Member's Net Loss by the Plan's Loss.

E.     The Claims Administrator shall then calculate for each Settlement Class Member his "Preliminary Dollar Recovery" from the Net Settlement Fund by multiplying the Settlement Class Member's Preliminary Fractional Share by the dollar amount of the Net Settlement Fund.

F.     The Claims Administrator shall identify all Settlement Class Members whose Preliminary Dollar Recovery is less than a minimum amount of fifty dollars ($50.00) (the "Minimum Amount"). All such Settlement Class Members shall receive an allocation from the Net Settlement Fund of the Minimum Amount.

G.     The Claims Administrator shall then, taking into account the Settlement Class Members who receive the Minimum Amount, recalculate the Preliminary Fractional Shares and the Preliminary Dollar Recoveries as many times as necessary so as to arrive at the "Final Fractional Share" and the "Final Dollar Recovery" for each remaining Settlement Class Member, which in sum must equal the dollar amount of the Net Settlement Fund.

IV.     **Distribution of the Allocated Amounts**

A.     As soon as practicable after the Effective Date of the Settlement and final calculations pursuant to Section III above, Lead Counsel shall direct the Escrow Agent to deposit the Net Settlement Fund into the Plan.

B.     *Settlement Class Members With Accounts Under the Plan.* As promptly as possible after deposit of the Net Settlement Fund into the Plan, the Claims Administrator and/or the Plan Trustee shall allocate to each Settlement Class Member's account under the Plan the Settlement Class Member's Final Dollar Recovery as calculated above. The deposited amount shall be allocated among each Settlement Class Member's investment options in accordance with the existing investment elections then in effect and treated thereafter for all purposes under the Plan as assets of the Plan properly credited to that Settlement Class Member's account.

C.     *Settlement Class Members Without Accounts Under the Plan.* With respect to Settlement Class Members who withdrew their accounts under the Plan after the beginning of the Settlement Class Period but prior to the entry of the instant Order, the Plan Trustee will establish an account for each such Settlement Class Member, and each such Settlement Class Member will be notified of the account along with further instructions from the Plan Trustee, in consultation with the Parties. The deposited amount shall be invested in the Wells Fargo Stable Return Fund. Such Settlement Class Members' new accounts shall be subject to all the terms of the Plan,

4

including terms that may mandate the time and manner of distribution based on the amount of assets held in the account.

1.      Pursuant to Plan Section 6.3(c), if an account contains $1,000 or less, and the employment of the account holder has been severed, the account balance must be distributed in a single lump sum as soon as administratively practicable. Accordingly, the account balance for any account that is created in accordance with this Plan of Allocation and contains $1,000 or less shall be distributed as soon as administratively practicable after funds are allocated.

2.      The Plan Trustee shall provide notice of the options allowed under Plan Section 6.3(c) to Settlement Class Members for whom accounts containing more than $1,000 are created in accordance with this Plan of Allocation. If the balance of such an account is greater than $1,000 but does not exceed $5,000, and the Settlement Class Member does not, within a reasonable time period, elect to (1) have such distribution rolled over to an eligible retirement plan in a direct rollover, or (2) receive the distribution directly, then the account balance shall be automatically rolled over into an IRA as soon as administratively practicable.

D.      In accordance with Section 8.9 of the Settlement Agreement, if Class Counsel is unable to locate a Settlement Class Member after reasonable efforts, the Settlement Class Member's account shall be forfeited and used to pay costs and expenses related to effectuation of the Settlement.

## V.     Qualifications and Continuing Jurisdiction

A.     In light of potential variations in the manner in which the data is kept and the ease with which it can be manipulated, it may be appropriate to simplify some of the features of these calculations. Such simplifications are acceptable as long as the two basic features of the distribution of the Net Settlement Fund Proceeds are preserved: (1) that each Settlement Class Member receives at least the Minimum Amount or, if greater, a proportionate share of the Net Settlement Fund Proceeds based approximately on the decline in the value of Employer Stock held in the Settlement Class Members' account over the Class Period in comparison with the decline in value of Employer Stock held by all other Settlement Class Members; and (2) that the distribution take place through the Plan so as to realize the tax advantage of investment in the Plan.

B.     The Court will retain jurisdiction over the Plan of Allocation to the extent necessary to ensure that it is fully and fairly implemented.

**SO ORDERED** this ___ day of _____, 2010

_____
HON. PATRICK J. SCHILTZ
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

# EXHIBIT E

## EXHIBIT E

## [PROPOSED] ESCROW AGENCY AGREEMENT

This Escrow Agency Agreement ("Escrow Agreement") is entered into in connection with the pending settlement of *Morrison v. MoneyGram International, Inc.* This action was prosecuted in the United States District Court of Minnesota (the "Court") under the caption *Morrison v. MoneyGram International, Inc.,* 08-CV-1121 (referred to hereafter as the "Action").

I.   **Recitals**

    A.   The parties to this Escrow Agreement are as follows:

        (1)   Gainey & McKenna, Lead Counsel for Named Plaintiffs;

        (2)   _____ as escrow agent for Named Plaintiffs and Defendants (the "Escrow Agent");

        (3)   Defendant MoneyGram International, Inc. ("MoneyGram" or the "Company"); and

        (4)   Federal Insurance Company ("Federal").

    B.   Named Plaintiffs and Defendants have agreed to a settlement of the Action, as set forth in the Settlement Agreement, attached hereto as Exhibit A (the "Settlement Agreement"). Capitalized terms used herein, but not otherwise defined herein, shall have the respective meanings given such terms in the Settlement Agreement.

    C.   The Settlement Agreement provides for, among other things, the establishment of a Settlement Fund by or on behalf of the Company in the amount of $4.5 million (less certain expenses), which amount shall be disbursed in accordance with the terms of the Settlement Agreement. Defendants agree to pay or cause to be paid the total principal amount of $4.5 million into the Escrow Account pursuant to the instructions in this Escrow Agreement within 14 calendar days of the Court's entry of the Preliminary Approval Order.

    D.   The parties hereto have entered into this Escrow Agreement to carry out and effectuate the Settlement Agreement. In the event of any conflict between the Settlement Agreement and any provision herein, the Settlement Agreement shall govern.

Now, therefore, in consideration of the foregoing and the mutual covenants and considerations contained herein, the parties agree as follows:

II.   **Appointment of Escrow Agent and Deposits into Escrow**

    A.   The parties hereto hereby appoint the Escrow Agent to act as escrow agent hereunder and the Escrow Agent hereby accepts such appointment for the purpose of receiving, safeguarding and disbursing the Escrow Fund (as defined below) in accordance with the terms and conditions set forth herein.

B.   Within 14 calendar days following the Court's entry of the Preliminary Approval Order, the Company shall deposit or have deposited with the Escrow Agent by wire transfer of immediately available funds the amount of $4.5 million ($4,500,000) (the "Settlement Escrow Fund") in accordance with the wire transfer instructions listed below.   Defendants shall have no funding or payment obligation to the Escrow Fund whatsoever after such funding occurs.   The Escrow Agent agrees to further deposit such amounts into an interest bearing account at _____ Bank in the name *Morrison v. MoneyGram International, Inc.* (the "Escrow Account").

_____ Bank
Address
ABA #: _____
Acct name: _____
Acct Number: _____

## III.   Interest and Investments

A.   As promptly as possible upon receipt of available funds the Escrow Agent shall cause any funds deposited into the Escrow Account to be invested in either short term United States Agency or Treasury securities backed by the full faith and credit of the United States Government ("Debt Obligation") or in money market funds whose portfolio is composed of short-term United States Agency or Treasury securities (which are backed by the full faith and credit or the United States Government), and shall reinvest the proceeds as they mature in similar instruments and/or funds at their then current market rates.   However, if bank fees exceed interest to be earned on investments, the Escrow Agent shall not invest the Escrow Fund.   The Escrow Agent shall have the right to liquidate any investments held in order to provide funds necessary to make required payments under this Escrow Agreement.   The Escrow Agent shall have no liability for any loss sustained as a result of any investment or as a result of any liquidation of any investment prior to its maturity.

B.   The Escrow Agent may sell or present for redemption any investment described in Paragraph III (A) above whenever it shall be necessary in order to provide funds to meet any payment required pursuant to this Escrow Agreement, and the Escrow Agent shall not be liable or responsible for any loss resulting therefrom.

## IV.   Taxes and Related Matters

A.   The parties to this Escrow Agreement agree to treat the Escrow Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. Section 1.468B-1.   In addition, the parties to this Escrow Agreement shall jointly and timely make such elections as necessary or advisable to carry out the "relation-back election" (as defined in Treas. Reg. Section 1.468B-1) back to the earliest permitted date.   Such elections shall be made in compliance with the procedures and requirements contained in such regulations.   It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and to cause the appropriate filing to occur.   Notwithstanding anything to the contrary in this Escrow Agreement or in the Stipulation, the parties agree and acknowledge that,

for purposes of Section 468B of the Internal Revenue Code of 1986, as amended (the "Code") and the Treasury Regulations promulgated thereunder, only the Company shall be treated as a "transferor" (within the meaning of such term under Treasury Regulations Section 1.468B-1(d)(1)) with respect to the Escrow Fund.

B.     For the purposes of Section 468B of the Code and the Treasury Regulations promulgated thereunder, the "administrator" shall be the Escrow Agent.   The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Escrow Fund (including without limitation the returns described in Treas. Reg. Section 1.468B-2(k)).   Such returns (as well as the election described in Paragraph IV(A) of this Escrow Agreement) shall be consistent with this Paragraph IV(B) and, in all events, shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned on the Escrow Fund shall be paid out of the Escrow Fund as provided in Paragraph IV(C)) hereof.

C.     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Escrow Fund, including any taxes or tax detriments that may be imposed on the parties to this Escrow Agreement or their respective counsel, with respect to any income earned by the Escrow Fund for any period during which the Escrow Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes") and (ii) all expenses and costs incurred in connection with the operation and implementation of this Section IV (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses related to filing (or failing to file) any necessary returns) ("Tax Expenses") shall be paid solely out of the Escrow Fund; in all events, no party to this Escrow Agreement, nor their respective counsel, except for the Escrow Agent, shall have liability or responsibility for the payment of Taxes from the Escrow Fund and/or Tax Expenses from the Escrow Fund, or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority.   Plaintiffs are not responsible for Taxes or Tax Expenses, or any amount that may be required to be withheld under Treasury Regulation Section 1.468B-2(l)(2), or any amounts that may be required to be withheld under Treasury Regulation Section 1.468B-2(1)(2). Defendants are not responsible and shall have no liability for such Taxes and Tax Expenses, or for any reporting requirements that may relate thereto.  The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section IV.

## V.     Distribution of the Escrow Fund

A.     Except as set forth herein and in paragraph 7.3 of the Settlement Agreement, until the Effective Date has occurred, the Escrow Fund shall only make disbursements from the Escrow Fund in accordance with a joint written direction from Lead Counsel, counsel for Defendants, and Federal, executed and delivered to the Escrow Agent. Consent to executing any joint written direction shall not be unreasonably withheld and any request for execution of a joint written direction shall be responded to promptly.

B.    Upon entry of the Preliminary Approval Order, the Escrow Agent, upon authorization from Lead Counsel, counsel for Defendants, and Federal, may disburse monies allocable to the payment of administrative expenses described in paragraphs 7.6 and 7.7 of the Settlement Agreement, including expenses incurred by the retention of the Independent Fiduciary, any third-party claims administrator retained by the Named Plaintiffs, the Trustee, and the Recordkeepers as provided for in the Settlement Agreement.

C.    In the event that the Effective Date of the Settlement Agreement does not occur, or that the Settlement Agreement is terminated, or the Order allowing the payment of attorney's fees and expenses is reversed or modified on appeal, and in the event that fees and expenses have been paid to Lead Counsel to any extent, Lead Counsel shall within five business days from receiving notice from Defendants' counsel, Federal, or from the Court of appropriate jurisdiction, refund to the Settlement Fund all of the fees, expenses and costs previously paid to them from the Settlement Fund plus interest thereon at the same rate earned on the Settlement Fund.

## VI.    Termination of the Escrow Agreement

A.    In the event that the Effective Date of the Settlement Agreement does not occur, or that the Settlement Agreement is terminated, then upon receipt of joint written direction from Lead Counsel and counsel for Defendants, or notice from the Court, the Escrow Agent shall, within five business days and without the necessity of any Court order, refund to the Company and Federal, in proportion to their contribution to the Settlement Fund, the entire balance of the Escrow Fund (including all interest accrued or earned thereon), less any expenses paid from the Escrow Fund in accordance with Sections IV and V hereof. In the event that the accrued interest and earnings of the Escrow Fund are not sufficient to cover the expenses paid from the Escrow Fund in accordance with Sections IV and V hereof, those expenses shall be deducted by the Escrow Agent from the amounts returned to the Company and Federal. In the event that the Escrow Funds are less than the amount of the funds paid into the Escrow Account by the Company and Federal, the parties hereto acknowledge that any shortfall will be deemed a loss under the Federal Insurance Policies which acts to deplete the limit of liability under those policies.

B.    In the event that the Effective Date of the Settlement Agreement does not occur or that the Settlement Agreement is terminated, Lead Counsel and counsel for Defendants agree that each will promptly deliver the notice referred to in Section VI(A) to the Escrow Agent and that such notice will not be unreasonably withheld.

## VII.    Miscellaneous Provisions

A.    Immediately following the Effective Date, upon notice from Lead Counsel, consistent with the terms of the Settlement Agreement, the Escrow Agreement shall be revised to remove the Company and Federal from the Escrow Agreement, and the Company and Federal shall no longer be signatories to the Escrow Agreement. At that time, the Escrow Agent's reporting obligations shall be solely to Lead Counsel.

B.  The Escrow Agent shall file with Lead Counsel, and mail or e-mail copies to the Company and Federal, within five business days after the receipt of each periodic (monthly) account statement until the termination of this Escrow Agreement (and within five business days of the receipt of any periodic statement received after the Termination of this Escrow Agreement), a statement of receipts and disbursements, and property on hand pertaining to the Escrow Fund.

C.  The Escrow Agent's acceptance and administration of the Escrow Fund shall constitute its submission to the jurisdiction of the Court in the Action for the purposes of carrying out and enforcement of this Escrow Agreement.

D.  The Escrow Agent undertakes to perform only such duties as are expressly set forth herein and no duties shall be implied. The Escrow Agent shall have no liability under and no duty to inquire as to the provisions of any agreement other than this Escrow Agreement. The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, instruction or request furnished to it hereunder and believed by it to be genuine and to have been signed or presented by the proper party or parties. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document. The Escrow Agent shall have no duty to solicit any payments which may be due it hereunder. The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction determines that the Escrow Agent's negligence, gross negligence or willful misconduct was the primary cause of any loss to the Named Plaintiffs and/or Defendants. The Escrow Agent may consult with counsel. In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Escrow Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be directed otherwise in writing by all of the other parties hereto or by a final order or judgment of a court of competent jurisdiction. Anything in this Escrow Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

E.  No party to this Escrow Agreement is liable to any other party for losses due to, or if it is unable to perform its obligations under the terms of this Escrow Agreement because of, acts of God, fire, war, terrorism, floods, strikes, equipment or transmission failure, or other causes reasonably beyond its control.

F.  No rights or responsibilities under this Escrow Agreement may be assigned or delegated by the Escrow Agent without prior written approval of the parties hereto; provided, however, that if no approval can be obtained after good faith effort, then upon thirty (30) days written notice by the Escrow Agent to the parties hereto, the Escrow Agent shall have the right to apply to the Court for instructions.

G.  All funds held by the Escrow Agent by virtue of this Escrow Agreement shall be deemed and considered to be held in *custodia legis* of the Court until such time

5

as the Effective Date of the Settlement has occurred and the Escrow Funds have been transferred out of the Escrow Account pursuant to the Settlement Agreement, or the Escrow Funds are returned to the parties hereto consistent with the terms of this Escrow Agreement.

H.  This Escrow Agreement shall be governed by and interpreted according to the laws of the State of Minnesota.

I.  This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed an original and all of which together shall constitute one and the same Escrow Agreement.

J.  This Escrow Agreement is deemed to have been drafted by all parties hereto and no language contained herein shall be construed against any party hereto.

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed by them or their duly authorized counsel as of the last date of execution below.

Dated: _____, 2010                     **Gainey & McKenna**

                                       _____
                                       Thomas J. McKenna, Esq.
                                       295 Madison Avenue, 4th Floor
                                       New York, NY   10017
                                       (212) 983-1300
                                       Lead Counsel for Plaintiffs

Dated: _____, 2010                     **[Escrow Agent]**

                                       By: _____
                                       Its _____

Dated: _____, 2010                     **Dorsey & Whitney, LLP**

                                       _____
                                       Stephen P. Lucke, Esq.
                                       50 South Sixth Street, Suite 1500
                                       Minneapolis, MN 55402-1498
                                       (612) 343-7947
                                       Counsel for Defendants

Dated: _____, 2010                    **Chubb & Son, A Division of Federal Insurance Company**


_____

# EXHIBIT F

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA
## SUMMARY NOTICE OF CLASS ACTION SETTLEMENT

| | |
|---|---|
| DELILAH MORRISON and SHERRI ARGUELLO, On Behalf of Themselves And All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MONEYGRAM INTERNATIONAL, INC., *et al.*,<br><br>Defendants. | Civil Action: 08-cv-01121-PJS-JJG<br><br><br>**CLASS ACTION SETTLEMENT AGREEMENT** |

### TO MEMBERS OF THE FOLLOWING CLASS:

All persons (other than Defendants or members of the MoneyGram International, Inc. Pension & 401(k) Committee (the "401(k) Committee") and their beneficiaries, alternate payees (including spouses) and successors-in-interest) who both (i) were participants in or beneficiaries of the MoneyGram International, Inc. 401(k) Plan at any time during the period starting on July 1, 2004, through October 7, 2010 ("Class Period") and (ii) as part of participation in the Plan, held Employer Stock within the Employer Stock Fund, as those terms are defined in the Plan; <u>and</u> as to each such Person, his, her, or its beneficiaries, alternate payees (including spouses of deceased Persons who were Plan participants), and Successors-In-Interest.

### PLEASE READ THIS NOTICE CAREFULLY.
### A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION.

A Settlement has been proposed in a class action lawsuit brought by Plaintiffs on behalf of participants or beneficiaries in the MoneyGram International, Inc. 401(k) Plan ("Plan") against MoneyGram International, Inc. ("MoneyGram" or the "Company") and certain of its officers, directors, and employees under the Employee Retirement Income Security Act of 1974 ("ERISA"). Although Defendants deny any liability or wrongdoing, to fully resolve the lawsuits without further expense, Defendants have agreed to provide $4,500,000 to the Plan for distribution among Settlement Class members. The Court will have a hearing to decide whether to approve the Settlement.

### WHAT IS THIS ABOUT?

The lawsuit claimed that Defendants breached their duties under ERISA by causing the Plan to purchase and hold MoneyGram stock at a time when MoneyGram stock was an imprudent investment for the Plan; providing inaccurate and incomplete information to Plan participants and Plan fiduciaries; failing to address conflicts of interest between their personal and corporate interests and their fiduciary responsibilities to the Plan. Defendants deny that they breached any fiduciary duties or any other provisions of ERISA and believe that they acted properly and in accordance with ERISA and that the lawsuit is without merit. The Court did not decide which side would ultimately prevail, but both sides agreed to the Settlement to ensure a resolution, avoid the cost and risk of litigation, and to provide benefits to Class Members.

### WHAT DOES THE SETTLEMENT PROVIDE?

The Company agreed to create a fund of $4,500,000 to be divided among all Class Members, after payment of attorney fees, expenses and case contribution awards to the Named Plaintiffs, and other costs as the Court may allow. An Agreement, available at the website identified below, describes all of the details about the proposed Settlement. This Settlement releases claims under ERISA for the Class Period.

### HOW DO YOU RECEIVE A PAYMENT?

If you are a Class Member and are entitled to a share of the Settlement Fund according to the Agreement, you will not be required to do anything in order to receive a payment. Payments will be made directly to your Plan account or, if you no longer are a Plan participant, a Plan account will be established for you and you will be notified of such account along with further instructions.

### CAN I OBJECT TO OR OPT-OUT OF THE SETTLEMENT?

**You do not have the right to exclude yourself from the Settlement in this case but you do have the right to object by writing to the Court.** The detailed Notice, provided to Settlement Class members at their home addresses, explains how to object. The case was certified under Fed. R. Civ. P. 23(b)(1) and/or (b)(2) as a "non opt-out" class action because of the way ERISA operates. Therefore you will be bound by any judgments or orders that are entered in this Action, and, if the Settlement is approved, you will be deemed to have released all of the Defendants from all claims that were or could have been asserted in this case, other than your right to obtain the relief provided to you, if any, by the Settlement. The Court will hold a hearing in this case on _____, to consider whether to approve the Settlement and a request by the lawyers representing all Settlement Class members (Gainey & McKenna and Perry & Perry, PLLP) for attorneys' fees, expenses and case contribution awards. If approved, these amounts will be paid from the Settlement Fund. You may ask to appear at the hearing, but it is not required.

For more information regarding anything in this Summary Notice, or to receive a copy of the Notice of Class Action Settlement in the form approved by the Court, call toll-free _____, or visit _____.